758 So.2d 516 (1999)
Ex parte Dorothy B. FOSTER.
(In re Dorothy B. Foster v. David Belew et al.)
1972306.
Supreme Court of Alabama.
August 20, 1999.
Rehearing Denied January 28, 2000.
*517 J. Danny Hackney of Gaiser & Associates, P.C., Birmingham; and Michael E. Newell of Jackson & Newell, Haleyville, for petitioner.
Michael C. Quillen and Emily Sides Bonds of Walston, Wells, Anderson & Bains, L.L.P., Birmingham, for respondents David Belew and William Belew Insurance Agency.
Dorothy A. Powell and Marda W. Sydnor of Parsons, Lee & Juliano, P.C., Birmingham, for respondent Southern United Fire Insurance Company.

On Rehearing Ex Mero Motu
PER CURIAM.
This Court released an opinion in this case on March 19, 1999. On March 25, 1999, it entered an order withdrawing that March 19, 1999, opinion and placing the case on rehearing, ex mero motu.
Dorothy B. Foster, the plaintiff in an action pending in the Jefferson County Circuit Court, petitions for a writ of mandamus directing the trial court to vacate its order compelling arbitration of her claims against the defendants David Belew, William Belew Insurance Agency, and Southern United Fire Insurance Company based on allegations of fraud, breach of contract, and bad-faith failure to pay an insurance claim. The petition is denied.[1]
The trial court, without stating its reasons, granted the defendants' motion to compel arbitration. The motion was based on a broad arbitration provision in Foster's insurance policy that reads, in pertinent part, as follows:
"ArbitrationAny and all disputes, disputed claims and controversies of any nature whatsoever between any insured and Southern United Fire Insurance Company, its agents (or persons or entities alleged to be its agents), employees, representatives, and/or officers, whether such disputes, demands, claims or controversies are based upon, relate to or arise out of this Policy (or the issuance or events leading up to the issuance of this Policy), any disputed claims submitted under this Policy, or to any event, statement, act, omission or condition which occurred or failed to occur prior to the issuance of this Policy or which occurs or fails to occur contemporaneously with the issuance of this Policy or which occurs or fails to occur at any *518 time after this Policy is issued, will be submitted to binding arbitration. In addition, all questions, disputes and controversies of any nature whatsoever related to the enforceability, validity, scope of interpretation of this Policy or this arbitration clause shall be resolved by binding arbitration."
(Emphasis on "claims" in original; other emphasis added.)[2]
Foster argues 1) that the McCarran-Ferguson Insurance Regulation Act, 15 U.S.C. §§ 1011-1012 ("McCarran-Ferguson Act"), precludes application of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), to policies of insurance and, therefore, that Ala.Code 1975, § 8-1-41(3), renders the arbitration provision unenforceable; 2) that the insurance application she signed contained no arbitration provision and, therefore, that she did not assent to the arbitration provision contained in her policy; 3) that she did not agree to the arbitration provision contained in her policy (for the reason stated in number 2 above) and, therefore, that enforcement of the arbitration provision would violate the FAA and, in turn, her rights under Article I, § 10, § 11, and § 13 of the Alabama Constitution of 1901; 4) that the arbitration provision is too vague or uncertain to enforce (i.e., that it fails to specifically disclose the various fees required to initiate the arbitration process and to pay the arbitrators); and 5) that the arbitration provision should not be enforced because, she says, it is part of an adhesion contract and is unconscionable. In support of her fifth argument, Foster contends that she was not aware that the arbitration provision would be in her policy (specifically, she argues that it was a complicated provision buried in a complicated document that she was presented on a "take-it-or-leave-it basis" and that she was not told of its existence) and that participation in the arbitration process would create a financial hardship on her.
The issue whether the contract grants to an arbitrator the power to decide preliminary issues of arbitrability is for the court. When deciding whether the parties agreed to arbitrate issues of arbitrability, a court must apply general statelaw principles that govern the formation of contracts, subject to the specific federallaw requirement that there be "clear and unmistakable" evidence that the parties agreed to submit issues of arbitrability to an arbitrator. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). See, also, I. Macneil et al., Federal Arbitration Law, § 14.10.1, § 14.10.3, § 15.1.4.1 (1995). In determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability, the related and antecedent issues concerning whether an arbitration provision was fraudulently induced, is unconscionable, or is otherwise revocable, are for the court. See Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala.1997); see, also, Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA); I. Macneil, supra, chapter 19 "Consensual Defenses to Enforcement: Fraud, Duress and Undue Influence, Incapacity, Mistake, Unconscionability, and Adhesion Contracts" (containing a good discussion of contract defenses available under the FAA). The arbitration provision in Foster's policy is clear on its face, and in unmistakable terms it manifests the parties' assent to submit issues of arbitrability to arbitration. See Loerch v. National Bank of Commerce of Birmingham, 624 So.2d 552 (Ala.1993).[3] The clear language *519 of the arbitration provision prima facie shows that the parties agreed to arbitrate preliminary issues of arbitrability. Nothing in the record tends to rebut that prima facie showing so as to create a factual issue as to the parties' intent.
In this regard, we specifically note that Foster does not argue that she was fraudulently induced to agree to allow an arbitrator to decide issues of arbitrability. Furthermore, this Court has rejected Foster's first argumentthat the McCarran-Ferguson Act precludes application of the FAA to her insurance contract. See American Bankers Ins. Co. of Florida v. Crawford, 757 So.2d 1125 (Ala.1999). Foster's second argumentthat she should not be compelled to arbitrate anything (including issues of arbitrability) because the arbitration provision was included in her policy and not in the application she signedhas no support in Alabama contract law. See Ex parte Rager, 712 So.2d 333 (Ala.1998), wherein this Court held that an insurance application does not have to include an arbitration provision in order for a policyholder to be bound by an arbitration provision set out in the policy. Therefore, Foster's third argument, which is based on the faulty premise of her second argument, is equally without merit. In addition, in Ex parte McNaughton, 728 So.2d 592 (Ala.1998), this Court held that arbitration agreements, even those resulting from an apparent inequality of bargaining power, are not in themselves unconscionable, and, recently, in Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33 (Ala.1998), this Court considered and rejected the argument that financial hardship, standing alone, was a sufficient ground to justify revoking or rewriting an agreement to arbitrate:
"Phelps argues that it might place a hardship upon him to force him to pay the filing fees, but, if it does, this alone should not permit this Court to substitute different meanings for the terms used by the parties. To do so would be contrary to Alabama law:
"`Where a contract is unambiguous and plain in expression, we know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair. Where the parties express without ambiguity their intention, no court can alter the agreement, and no room for judicial construction is left.'
"Lilley v. Gonzales, 417 So.2d 161, 163 (Ala.1982).
"We should note, as did the Arizona Court of Appeals when it answered this same question in 1971 [A.P. Brown Co. v. Superior Court, 16 Ariz.App. 38, 490 P.2d 867 (1971)], that our holding in no way precludes claimants under financial hardships from acquiring a resolution to contract disputes they have agreed to arbitrate. Phelps did not exhaust his administrative remedies as to the matter of the filing fee; he did not pursue the options provided for him under the AAA Commercial Arbitration Rules. Rule 48 specifically provides that the AAA can defer or reduce the administrative fees `in the event of extreme hardship on the part of any party.' Phelps has not yet asked the AAA to do this. It is also possible under Rule 43 for the arbitrator to apportion all fees to one party or the other. The AAA's Commercial Arbitration Rules discourage frivolous claims, and, at the same time, they take into account the needs of financially distressed claimants."
718 So.2d at 37-38. Based on the holdings in Ex parte Rager, Ex parte McNaughton, and Ex parte Dan Tucker Auto Sales, we *520 conclude that Foster's fifth argument is also without merit.[4]
When there is no genuine issue of fact concerning the formation of an agreement to arbitrate, the court may decide, as a matter of law, that the parties did or did not enter into such an agreement. TranSouth Financial Corp. v. Bell, 739 So.2d 1110 (Ala.1999). The record indicates that Foster and Southern United agreed to submit their disputes to arbitration, including disputes over the enforceability of the arbitration provision; therefore, Foster has failed to demonstrate that she has a clear legal right to have the trial court set aside its order granting the defendants' motion to compel arbitration. Foster's fourth argument (that vagueness or uncertainty as to expenses associated with the arbitration process makes the arbitration provision unenforceable) does not pertain to the issue whether she agreed to submit issues of arbitrability to an arbitrator. The issue addressed by Foster's fourth argument is within the scope of the arbitration provision and, therefore, is for the arbitrator. A court should not decide that issue, because to do so would usurp the role of the arbitrator and thwart the intent of the parties.
WRIT DENIED.
HOOPER, C.J., and MADDOX, SEE, and BROWN, JJ., concur.[*]
HOUSTON, COOK, and JOHNSTONE, JJ., dissent.
LYONS, J., recuses himself.
*521 HOUSTON, Justice (dissenting).
I respectfully dissent. The McCarran-Ferguson Act precludes application of the FAA to the policy of insurance in this case; therefore, § 8-1-41(3), Ala.Code 1975, renders the arbitration provision unenforceable. See my special writing in American Bankers Ins. Co. of Florida v. Crawford, 757 So.2d 1125 (Ala.1999).
COOK, J., concurs.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from the decision to relegate this plaintiff to arbitration. I wrote this dissent, except for the final editing for emphasis, long before this Court released American Bankers Ins. Co. of Florida v. Crawford, 757 So.2d 1125 (Ala.1999). This dissent is just as valid now as it was before the release of American Bankers, which is so mistaken and so recent that we should not treat it as gospel.
The McCarran-Ferguson Act provides, in pertinent part, that "[no] Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purposes of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The Federal Arbitration Act, 9 U.S.C. § 2, does not specifically relate to the business of insurance. Woodmen of World Life Ins. Society v. Harris, 740 So.2d 362, 366 (Ala. 1999).
Section 27-14-22, Ala.Code 1975, provides: "All contracts of insurance, the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof." One of "the laws thereof" is § 8-1-41(3), Ala.Code 1975, which provides that "[a]n agreement to submit a controversy to arbitration" cannot be specifically enforced.
Section 27-14-22, incorporating § 8-1-41(3), is, as contemplated by the McCarran-Ferguson Act, a "law enacted by [a] State for the purposes of regulating the business of insurance." Therefore, the terms of the McCarran-Ferguson Act quoted above restrict the Federal Arbitration Act from invalidating, impairing, or superseding these Alabama statutes prohibiting the specific enforcement of arbitration agreements.
Because the McCarran-Ferguson Act saves the Alabama statute, § 27-14-22, regulating the business of insurance in Alabama from preemption by the Federal Arbitration Act, and because § 27-14-22 incorporates § 8-1-41(3), which prohibited the trial court from specifically enforcing the arbitration agreement, and because no arbitrator could derive any power to decide even issues of arbitrability from any source but the arbitration agreement itself, specifically enforced, no arbitrator could have any role in this case, and the trial court could not validly compel arbitration even to the extent of allowing an arbitrator to decide arbitrability. Thus we should grant the petition for writ of mandamus and thereby direct the trial court to vacate its order compelling arbitration.
NOTES
[1] A petition for a writ of mandamus is the generally accepted method for obtaining review of an order granting a motion to compel arbitration. See Thompson v. Skipper Real Estate Co., 729 So.2d 287 (Ala.1999).
[2] David Belew and William Belew Insurance Agency have standing to enforce the arbitration provision relied on by Southern United. See Ex parte Gray, 686 So.2d 250 (Ala.1996).
[3] In Loerch, this Court stated:

"The intention of the parties controls in construing a written contract, and the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous. Food Service Distributors, Inc. v. Barber, 429 So.2d 1025 (Ala.1983). Likewise, in Flowers v. Flowers, 334 So.2d 856, 857 (Ala.1976), this Court held that, absent evidence to the contrary, `the words of an agreement will be given their ordinary meaning.'"
624 So.2d at 553.
[4] Contract law generally recognizes a distinction between procedural unconscionability and substantive unconscionability:

"The concept of unconscionability was meant to counteract two generic forms of abuses: the first of which relates to procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction; and the second of which relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction."
8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed.1998). See, also, J. Calamari and J. Perillo, The Law of Contracts, § 9-40 (2d ed.1977); 17A Am.Jur.2d Contracts, § 295 (1991). Alabama law provides no explicit standard for determining whether a contractual provision is unconscionable; instead, each case must be decided on its own facts, based on several important factors that encompass aspects of both procedural and substantive unconscionability. See Layne v. Garner, 612 So.2d 404 (Ala.1992); Williams v. E.F. Hutton Mortgage Corp., 555 So.2d 158 (Ala.1989); Wilson v. World Omni Leasing, Inc., 540 So.2d 713 (Ala.1989); Williston, supra, § 18:14. Foster's fifth argument, which invokes the concepts of substantive and procedural unconscionability, is that a deficiency in the contract-formation process resulted in a lack of meaningful assent to contract on her part.
We further note that the arbitration provision at issue in this present case does not expressly incorporate the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The provision states only that "[a]ny arbitration proceeding conducted pursuant to this contract shall be conducted pursuant to the rules and procedures selected by the panel of arbitrators," subject to certain specified limitations. Of course, if the arbitration proceeding is to be conducted under the rules of the AAA (something Foster should be able to determine beforehand), then Foster may request a deferral or reduction of the fees and expenses. Certain expenses (filing fees, costs associated with discovery, etc.) are inherent in a person's pursuit of a civil remedy for an alleged wrong, whether that remedy is sought from a court or through the arbitration process. Those expenses traditionally have been borne either by the person seeking the remedy or by the attorney or attorneys representing that person. The record before us gives no indication that the arbitration proceeding will be more expensive for Foster than litigation in a court would be.
[*] Note from the reporter of decisions: During the period June 12, 1999, through September 1, 1999, the Alabama Supreme Court had a vacancy, following Justice Mark Kennedy's retirement.