775 So.2d 156 (2000)
SOUTHERN UNITED FIRE INSURANCE COMPANY, Consolidated Insurance Management Corporation, and Time Payment Plan
v.
David HOWARD.
1990482.
Supreme Court of Alabama.
July 21, 2000.
*158 Michael D. Knight, P. Russel Myles, and Benjamin H. Kilborn, Jr., of McDowell, Knight, Roedder & Sledge, L.L.C., Mobile, for appellants.
William D. Azar and Elizabeth C. Wible of Azar & Azar, L.L.C., Montgomery, for appellee.
SEE, Justice.
The defendants, Southern United Fire Insurance Company ("Southern"), Consolidated Insurance Management Corporation ("Consolidated"), and Time Payment Plan ("Time Payment") appeal from the trial *159 court's order denying their motion to compel arbitration of the plaintiff David Howard's claims. We reverse and remand.

I.
In 1997, Howard financed the purchase of an automobile from a Montgomery car dealership.[1] As a condition of financing, the lender required Howard to obtain an insurance policy covering the car. Howard applied for a six-month policy of insurance, and Southern issued one. Southern states that it mailed the policy to Howard, but Howard states that he does not remember receiving a policy from Southern in the mail. The evidence is undisputed that Howard paid premiums on the policy to cover the car for a period of six-months. The policy contains an arbitration provision.[2]
Near the end of the six-month policy period, Southern mailed Howard an "Automobile Renewal Quotation," offering to renew Howard's existing policy under the same terms and conditions of coverage. The quotation offered Howard the option to renew his policy for an additional 12-month term, with the payment of the premium in installmentsthe "12-Month Policy Installment Payment Option." The evidence is undisputed that Howard selected the 12-Month Installment Payment Option. The quotation provides that "if you select the 12-Month Installment Payment Option, the Insurance Premium Finance Contract on the reverse side hereof provided *160 through Time Payment Plan ... shall govern." The evidence is undisputed that Howard signed the insurance-premium finance contract on the back of the quotation. That contract provides, in part, that Time Payment shall pay Howard's premium on his Southern insurance policy and that, in exchange, Howard shall make installment payments to Time Payment. The evidence is undisputed that Howard sent Time Payment a check in the amount of $220.49, representing the down payment and the first installment on the financed premium. The evidence is also undisputed that at no time did Howard cancel his Southern policy.
A dispute arose concerning Howard's payment of premiums. Later, Howard was involved in an automobile accident and, as a result, submitted a claim under the Southern policy. A dispute then arose about coverage under the Southern policy.
In May 1999, Howard sued, among others, Southern, Consolidated, and Time Payment.[3] Howard alleges that Consolidated is the "managing general agent" of Southern and that he "entered into a contract for insurance with Southern by and through its agent[] ... Consolidated." Howard also alleges that Time Payment "at all times material hereto was acting in concert with ... Southern and Consolidated." Howard similarly alleges that Southern acted through its agent Consolidated. In his complaint, Howard claims that Southern and its alleged agents Time Payment and Consolidated fraudulently, wantonly, recklessly, and negligently "misappropriated his premium payments thereby causing [his] insurance coverage to be wrongfully canceled" and defamed his character by wrongfully canceling his insurance coverage. Southern, Consolidated, and Time Payment responded with a motion to compel arbitration of Howard's claims, based on the arbitration provision in the Southern insurance policy. The trial court denied the defendants' motion, holding: (1) "[t]he arbitration clause lacks the minimal guarantees needed to fulfill the remedial purposes of Alabama law and therefore it is void on its face"; (2) "[f]rom the plain language of the arbitration clause and the evidence presented by Howard a jury could find that he did not knowingly, willfully, and voluntarily agree to waive his right to a jury and a judicial forum for settling disputes"; (3) "[f]rom the plain language of the arbitration clause and the evidence presented by Howard a jury could find that no contract to arbitrate was formed"; and (4) "it would be unjust, unreasonable, unconscionable, or a contract of adhesion to enforce this arbitration contract against Howard." The defendants appeal from that order.

II.
A direct appeal is the proper procedure by which to seek review of a trial court's order denying a motion to compel arbitration. See A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990); see also Federal Arbitration Act ("FAA"), 9 U.S.C. § 16 (1994) (providing that an appeal may be taken from an order denying a motion to compel arbitration). This Court reviews de novo a trial court's denial of a motion to compel arbitration. See First American Title Ins. Corp. v. Silvernell, 744 So.2d 883, 886 (Ala. 1999). Section 2 of the FAA, 9 U.S.C. § 2, provides in pertinent part:
"A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
Section 2 preempts conflicting Alabama law, in particular Ala.Code 1975, § 8-1-41(3), and thereby makes enforceable under *161 federal law a predispute arbitration agreement in a contract evidencing a transaction that involves interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74, 277, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 617 (Ala.1997). For the FAA to apply and thus preempt state law, (1) there must be a valid, written arbitration agreement and (2) the contract must relate to a transaction involving interstate commerce. See Prudential Sec., Inc. v. Micro-Fab, Inc., 689 So.2d 829, 832 (Ala. 1997). The parties do not dispute that Southern's insurance policy relates to a transaction involving interstate commerce, within the meaning of the FAA. Thus, our inquiry is limited to whether there is a valid and enforceable arbitration agreement.
The defendants argue that the arbitration provision in the insurance policy is valid and enforceable because, they say: (1) Howard agreed to the arbitration provision by, among other things, paying monthly premiums, renewing the policy, and submitting a claim under the policy; (2) Howard failed to present sufficient evidence showing that the arbitration provision is an unconscionable contract of adhesion; (3) the arbitration provision is not void for indefiniteness or vagueness; and (4) the language of the arbitration provision clearly and unmistakably states that the parties agreed to submit to arbitration issues of arbitrability, namely, validity, enforceability, and scope.

A.
Under the doctrine of equitable estoppel, this Court has recognized the right of a defendant who is not a party to a contract containing an arbitration agreement to compel a plaintiff who is a party to the contract to submit his claims to arbitration where (1) the language of the arbitration provision is broad enough to encompass the plaintiff's claims against the nonparty defendant, or (2) the language of the arbitration provision does not preclude the nonparty defendant from seeking to compel arbitration and the plaintiffs claims against the nonparty defendant are either (a) based on duties or obligations founded in and intertwined with the contract, or (b) sufficiently intertwined with those against a party defendant (such as where the plaintiff alleges that the nonparty is the agent of the party or that the nonparty conspired or acted in concert with the party). See Ex parte Stamey, 776 So.2d 85 (Ala.2000). Both situations are present here.
First, the language of the arbitration provision in Southern's insurance policy is sufficiently broad to encompass Howard's claims against Consolidated and Time Payment. The contract provides for arbitration of "[a]ny and all disputes, disputed claims and controversies of any nature whatsoever between any insured and Southern United Fire Insurance Company, its agents (or persons or entities alleged to be its agents)." Second, Howard's claims against Consolidated and Time Payment are based on duties or obligations founded in and intertwined with the insurance policy. Howard's complaint makes no distinction among the wrongs alleged to have been committed by the various defendants. He specifically alleges that, under the insurance policy, Time Payment "had the responsibility and duty to make payments to ... Southern through its agent Consolidated" and that Consolidated and Time Payment misapplied his insurance-premium payment and thereby caused the insurance policy to be wrongfully canceled. Therefore, because Southern is entitled to compel arbitration of Howard's claims against it, as we discuss below, Consolidated and Time Payment are also entitled, under the doctrine of equitable estoppel, to compel arbitration of Howard's claims against them. And, third, because Howard alleges in his complaint that Consolidated and Time Payment are agents of Southern and acted in concert with Southern, the claims against Southern and those *162 against Consolidated and Time Payment are sufficiently intertwined.

B.
We disagree with the trial court's statement that a jury could reasonably find that Howard did not assent to the arbitration provision in Southern's insurance policy (the second and third grounds enumerated by the trial court, supra, for denying the defendants' motion to compel arbitration). The evidence in the record is undisputed that Howard paid premiums, renewed his policy, and submitted a claim under the policy. Howard did not cancel the policy or object to the arbitration provision. These facts manifested Howard's acceptance of Southern's offer to insure his car under the terms in its policy, which included the arbitration provision. See American Bankers Ins. Co. of Florida v. Crawford, 757 So.2d 1125 (Ala.1999);[4]Ex parte Rager, 712 So.2d 333 (Ala.1998).
Howard argues that he did not assent to the arbitration provision in the insurance policy because the arbitration provision was not included in the insurance application and because he did not sign the insurance policy. First, a contractual agreement to arbitrate may be found invalid only "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is not a requirement of Alabama contract law that for a contract provision to be enforceable it must have appeared also in the application to enter into the contract. See Ex parte Foster, 758 So.2d 516 (Ala.1999). Thus, the arbitration provision need not have appeared in the application for insurance for the parties to be bound by it. Second, "[t]his Court is required to compel arbitration if, under `ordinary state-law principles that govern the formation of contracts,' the contract containing the arbitration clause is enforceable." Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167 (Ala.1999). Alabama's general contract law permits assent to be evidenced by means other than signature, and, thus, the contract of insurance and the arbitration provision contained in it can be enforceable by the parties in the absence of signatures, where the evidence establishes the existence of the agreement.[5] Southern's insurance policy is not subject to either of Alabama's Statutes of Frauds, see Ala. Code §§ 7-2-201 and 8-9-2, nor is it made contingent upon the condition precedent that it be signed by Howard. Howard accepted and acted upon Southern's insurance policy, which contained the arbitration provision, by paying premiums, renewing the policy, and submitting a claim *163 under the policy. Therefore, because Howard ratified the policy, the absence of his signature does not render the policy, or the arbitration provision contained in it, unenforceable.
We disagree with the trial court's conclusion that the arbitration provision in the policy is unenforceable as unconscionable. Howard had the burden of presenting substantial evidence indicating that the arbitration provision in the policy was unconscionable. See Ex parte Napier, 723 So.2d 49, 53 (Ala.1998). "An unconscionable ... contractual provision is defined as a ... provision `such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" Layne v. Garner, 612 So.2d 404, 408 (Ala.1992) (quoting Lloyd v. Service Corp. of Alabama, 453 So.2d 735, 739 (Ala.1984), and Hume v. United States, 132 U.S. 406, 410, 10 S.Ct. 134, 33 L.Ed. 393 (1889)). In Layne, this Court stated:
"Although Alabama law lacks an explicit standard for determining whether a contract or contractual provision is unconscionable, case law reveals that four factors are important in making this determination.
"In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract."
Id. The only evidence submitted on this issue is that in Howard's affidavit. He states that he does not know what arbitration is and that he would not have agreed to the arbitration provision if he had known what it meant; that he does not recall receiving a copy of the policy; that he was unaware that the policy contained an arbitration provision; that he was not informed that the policy contained an arbitration provision and did not bargain for it; and that if he had to travel to Mobile (where arbitration is to take place under the terms of the arbitration provision), he "would have to take time off without pay." Howard's affidavit does not contain substantial evidence to support a determination of unconscionability. See Ex parte Napier, 723 So.2d at 52. Howard's affidavit does not indicate that he had no meaningful choice as to whom he would contract with for insurance or that he ever attempted to negotiate any of the terms of Southern's policy, including the arbitration provision. We cannot say that the arbitration provision is oppressive, one-sided, or patently unfair.[6] Therefore, we conclude that the arbitration provision in Southern's policy is not unconscionable.
Howard next argues that the arbitration provision is unenforceable because it does not specify the rules governing the arbitration proceeding; does not specify the arbitrators' fees and other costs associated with the arbitration proceeding; does not specify which party is responsible for paying costs, other than the arbitrators' fees; does not specify the substantive law that governs the arbitrators' decision; does not provide for the qualifications of the arbitrators; limits the parties' discovery rights; does not provide for the making of a record of the arbitration proceedings; does not require the arbitrators to make any findings supporting their decision; and does not provide for any review or enforcement of the arbitrators' decision. We conclude that Howard's argument is without merit because all of the issues raised concern matters of "procedural arbitrability" that are for the arbitrator to decide. Dean Witter Reynolds, Inc. v. McDonald, 758 So.2d 539 (Ala.1999) *164 (holding that matters of procedural arbitrability are for the arbitrator to decide) Additionally, the arbitration provision in clear and unmistakable terms provides that the parties agreed to submit such issues of arbitrability to arbitration. See Ex parte Foster, supra (addressing the same arbitration provision in another Southern insurance policy). The arbitration provision clearly provides that "all questions, disputes and controversies of any nature whatsoever related to the enforceability, validity, scope of [sic] interpretation of this Policy or this arbitration clause" are to be submitted to arbitration. Thus, the issues raised by Howard are for the arbitrator and not for a court to decide. Accordingly, the trial court erred in holding that the arbitration provision is too vague or uncertain to enforce.[7]
Finally, Howard argues that Ala. Code 1975, § 27-14-12(3), a part of Alabama's Insurance Code, incorporates Ala. Code 1975, § 8-1-41(3), which prohibits specific enforcement of an arbitration agreement, and thereby "reverse-preempts" the FAA, under the provisions of the McCarran-Ferguson Act, rendering the arbitration provision unenforceable. Section 27-14-12 provides that "[a] policy may contain additional provisions not inconsistent with [the provisions of the Alabama Insurance Code] and which are ... (3)[d]esired by the insurer and neither prohibited by law nor in conflict with any provisions required to be included therein." In American Bankers Ins. Co. of Florida v. Crawford, supra, we held that § 8-1-41(3) does not reverse-preempt the FAA under the provisions of the McCarran-Ferguson Act. Although we did not address the issue whether § 8-1-41(3) is incorporated into Alabama's insurance law by § 27-14-12(3), we did address whether § 8-1-41(3) is incorporated into Alabama's insurance law by § 27-14-22, the mandatory choice-of-law provision of Alabama's Insurance Code. We find that the rationale of Crawford is equally applicable to Howard's incorporation argument. In Crawford, "we conclud[ed] that § 8-1-41(3) was not `enacted for the purpose of regulating the business of insurance'" and that "[v]iewing that Code section through the prism of § 27-14-22 would not alter the essential character of § 8-1-41(3)." Id. at 1136. Similarly, we conclude in this case that viewing § 8-1-41(3) through the prism of § 27-14-12(3) does not transform § 8-1-41(3) into a law of insurance so as to reverse-preempt the FAA under the provisions of the McCarran-Ferguson Act. The arbitration provision in the Southern policy is not inconsistent with the provisions of Alabama's Insurance Code, because § 8-1-41(3) is not a part of that Code. It is not prohibited by federal law, and it is not prohibited by any contrary state law, specifically, § 8-1-41(3), because that state law is preempted by the FAA. Therefore, we reject Howard's final argument.

III.
We conclude that Howard agreed to the Southern contract of insurance, which included the arbitration provision, and that the defendants are, therefore, entitled to compel Howard to submit his claims against them to arbitration. Accordingly, we hold that the trial court erred in denying Southern, Consolidated, and Time Payment's motion to compel arbitration. The trial court's order denying the defendants' motion is reversed, and this case is remanded with instructions for the trial court to enter an order compelling arbitration.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOOPER, C.J., and MADDOX and BROWN, JJ., concur.
*165 LYONS, J., concurs in the result.
HOUSTON, COOK, JOHNSTONE, and ENGLAND, JJ., dissent.
HOUSTON, Justice (dissenting).
I would affirm for the reasons stated in my dissent in American Bankers Ins. Co. of Florida v. Crawford, 757 So.2d 1125 (Ala.1999). I continue to adhere to the view stated therein that "[b]ecause [Ala. Code 1975,] § 27-14-22, an `insurance-specific' statute, has within it the § 8-1-41(3) prohibition on the specific performance of arbitration agreements, § 27-14-22 itself provides everything required by the McCarran-Ferguson Act to `reverse-preempt' the FAA." 757 So.2d at 1138. I will adhere to this position until all the Justices elected or appointed to this Court have addressed the issue.
ENGLAND, J., concurs.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. The McCarran-Ferguson Act exempts § 27-14-12(3), Ala. Code 1975, from the preemptive effect of the Federal Arbitration Act, and § 27-14-12(3) applies § 8-1-41(3), Ala.Code 1975, to prohibit the inclusion of specifically enforceable arbitration provisions in insurance policies.
NOTES
[1] The dealership is not a party to this action.
[2] The arbitration provision reads in its entirety as follows:

"11. ArbitrationAny and all disputes, disputed claims and controversies of any nature whatsoever between any insured and Southern United Fire Insurance Company, its agents (or persons or entities alleged to be its agents), employees, representatives, and/or officers, whether such disputes, demands, claims or controversies are based upon, relate to or arise out of this Policy (or the issuance or events leading up to the issuance of this Policy), any disputed claims submitted under this Policy, or to any event, statement, act, omission or condition which occurred or failed to occur prior to the issuance of this Policy or which occurs or fails to occur contemporaneously with the issuance of this Policy or which occurs or fails to occur at any time after this Policy is issued, will be submitted to binding arbitration. In addition, all questions, disputes and controversies of any nature whatsoever related to the enforceability, validity, scope of [sic] interpretation of this Policy or this arbitration clause shall be resolved by binding arbitration. Arbitration of all matters subject to this agreement shall be before a panel of three arbitrators, one of which shall be chosen by each party with a third being chosen by the two arbitrators selected by the parties. None of the arbitrators shall have a family or employment relationship with either of the parties or either of the other arbitrators. Each party will pay the fee of its own arbitrator and the fee of the third arbitrator will be split equally by the parties. Unless the parties agree otherwise, any arbitration proceeding conducted pursuant to this agreement shall be conducted in Mobile, Alabama. Any arbitration proceeding conducted pursuant to this contract shall be conducted pursuant to the rules and procedures selected by the panel of arbitrators, with the following limitations:
"a. In no case shall the arbitrators order or permit any party to obtain from any other party documents, testimony or any other evidence relating in any way to a transaction other than the specific transaction out of which the controversy between the parties which is the subject of the arbitration proceeding arises;
"b. The opinion of a majority of the arbitrators in any arbitration proceeding held pursuant to this agreement shall constitute a final and binding decision of the panel;
"c. The arbitrators shall not be required to render a written or oral explanation of their decision but shall provide written notice of the panel's decision to the parties by certified mail; and
"d. The parties to the arbitration shall be bound by any state or federal statute of limitations which would otherwise be applicable to any claim, demand, dispute or controversy which is the subject of any arbitration proceeding hereunder.
"The invalidity or unenforceability of any part, term or portion of this arbitration agreement shall not invalidate or effect [sic] the remainder of this arbitration agreement or this Policy and the valid remainder of each shall remain in full force and effect."
(Emphasis in original.)
[3] Howard also named Bush Insurance Agency as a defendant. Bush is apparently the insurance agency through which Howard purchased the Southern policy. Bush, however, is not a party to this appeal.
[4] Howard argues that Crawford is distinguishable because in that case there was no dispute that the insured received a copy of the insurance policy. Howard argues that a jury could reasonably find that he did not agree to the arbitration provision in Southern's insurance policy and that he did not knowingly, willingly, and voluntarily waive his right to a jury trial because, he states in his affidavit, "[he] [does] not recall seeing or receiving a copy of the Southern ... policy." Based on this evidence, Howard argues that "a jury could find that the only offer either party ever made to the other was an offer of insurance; that no offer to arbitrate disputes was ever made to [him]; and, therefore, that arbitration was not a part of the contract made." First, we do not consider Howard's equivocal statement that he does not recall receiving a copy of the policy to be substantial evidence that he did not receive the policy. Second, this argument is without merit because the undisputed evidence shows that Howard accepted and signed Southern's offer to renew his policy under the same terms and conditions, including the arbitration provision.
[5] General Alabama contract law provides:

"Unless a contract is required by a statute to be signed (the FAA contains no such requirement), or [is required] by the Statute of Frauds [to be in writing] ... ([Alabama's general Statute of Frauds] requires the signature of the party against whom enforcement is sought), or unless the parties agree that a contract is not binding until it is signed by both of them..., it need not be signed by the party against whom enforcement is sought, provided it is accepted and acted upon."
Ex parte Rush, 730 So.2d 1175, 1178 (Ala. 1999); see also Quality Truck & Auto Sales, Inc., 730 So.2d at 1168-70.
[6] We note that the identical arbitration provision was at issue in Foster and that in that case, as in this case, the insured argued that the arbitration provision was unconscionable. This Court held in Foster that the arbitration provision was not unconscionable.
[7] We note that in Foster we addressed the same arbitration provision. In Foster, the insured similarly argued that the arbitration provision was too vague or uncertain to enforce. We held that this issue was within the scope of the arbitration provision, and, thus, was for the arbitrator, and not a court, to decide.