STUART, Justice.
Gladys Tellis, Sherry Bronson, Gwendolyn Moody, Nadine Ivy,'and Uneeda Tram-mell (hereinafter referred to collectively as “the policyholders”) initiated separate actions against American Bankers Insurance Company of Florida (“American Bankers”), asserting generally that American Bankers had sold them homeowner’s insurance policies providing a level of coverage they could neyer receive, even in the event of a total loss involving the covered property. American Bankers thereafter moved the trial court hearing, each action to compel arbitration pursuant to arbitration provisions it alleged were part of the subject policies; however, the trial courts denied those motions, and American Bankers now appeals. We consolidated the five appeals for the purpose of writing one opinion. We reverse and remand.
*388 I.
The facts underlying each of these five consolidated appeals are substantially identical. Sometime in 2012 or 2013 each of the policyholders renewed a homeowner’s insurance policy he or she had previously obtained from American Bankers. Thereafter, each concluded that he or she was paying excessive premiums inasmuch as the policies provided a level of coverage that allegedly far exceeded the value of the covered properties; in other words, the policyholders allege that they were overinsured inasmuch as they could never receive the policy limits even if the covered property was declared a total loss. In February 2014, the policyholders separately sued American Bankers, alleging breach of contract, several species of fraud, unjust enrichment, and negligence and/or wantonness.
American Bankers thereafter moved the trial courts in which these actions were filed — the Bullock Circuit Court, the Chambers Circuit Court, and the Macon Circuit Court — to compel arbitration pursuant to the following arbitration provision it alleged was contained in the policyholders’ policies:
“Any and all claims, disputes, or controversies of any nature whatsoever ... arising out of, relating to, or in connection with (1) this policy or certificate or any prior policy or certificate issued by us to you ... shall be resolved by binding arbitration before a single arbitrator. All arbitrations shall be administered by the American Arbitration Association (‘AAA’) in accordance with its Expedited Procedures of the Commercial Arbitration Rules of the AAA in effect at the time the claim is filed.”
The policyholders opposed the motions to compel arbitration, arguing that they had never consented to arbitrate their claims, that they had not signed' any documents containing an arbitration provision, and that the arbitration provision in the policies was unconscionable. The trial courts thereafter denied each of American Bankers’ motions to compel arbitration, and American Bankers separately appealed those denials to this Court pursuant to Rule 4(d), Ala. R.App. P. This Court consolidated the appeals based on the similarity of the facts and the issues presented.
II.
Our standard of review of a ruling denying a motion to compel arbitration is well settled:
“ ‘This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. “[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing).”’
Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala.2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000)).
III.
In order to answer the ultimate question in these cases — whether the trial *389 courts erred in denying American Bankers’ motions to compel arbitration — we must address three issues: (1) whether the parties agreed to arbitrate the claims asserted in the policyholders’ complaints; (2) whether the underlying transactions, i.e., the sale of the insurance policies, affected interstate commerce; and (3) whether the arbitration provision in the subject policies is unconscionable. With regard to the first issue, American Bankers submitted to the respective trial courts a copy of the policy allegedly issued to each of the policyholders. Included as part of those policies are basically two forms referencing arbitration: form AJ9821EPC-0608 and form N1961-0798.[1] Form AJ9821EPC-0608 is entitled “Arbitration Provision Alabama” and contains a general arbitration provision, part of which is quoted above. Form N1961-0798 is entitled “Important notice about the policy/certificate of insurance for which you have applied” and explains génerally what arbitration is and states that the policy contains a binding arbitration agreement pursuant to which the insured and the insurer waive the right to trial in a court of law. Although form N1961-0798 contains a signature line for the applicant, a co-applicant, and a witness, it is undisputed that none of the policyholders executed this form. The policyholders have further executed affidavits swearing that they never received or signed either form — or any other document related to their American Bankers’ policies purporting to be an arbitration provision — when applying for insurance or at anytime thereafter until the commencement of this litigation. They further state that they never would have purchased coverage' from American Bankers had they been presented with the arbitration provision American Bankers now seeks to enforce.
American Bankers concedes that the policyholders never signed form N1961-0798 or separate arbitration agreements, but it argues that they nevertheless assented to the arbitration provision in their policies. In support of its argument that an arbitration provision in an insurance policy can be effective even if not disclosed in the application and even without the insured’s signature, American Bankers cites Southern United Fire Insurance Co. v. Howard, 775 So.2d 156, 162-63 (Ala. 2000), which provides:
“[The plaintiff] argues that he did not assent to the arbitration provision in the insurance policy because the arbitration provision was not included in the insurance application and because he did not sign the insurance policy. First, a contractual agreement to arbitrate may be found invalid only ‘upon such grounds as exist at law or in equity for the revocation of any contract.’ 9 U.S.C. § 2. It is not a requirement of Alabama contract law that for a contract provision to be enforceable it must have appeared also in the application to enter into the contract. See Ex parte Foster, 758 So.2d 516 (Ala.1999). Thus, the arbitration provision need not have appeared in the application for insurance for the parties to be bound by it. Second, ‘[t]his Court is required to compel arbitration if, under “ordinary state-law principles that govern the formation of contracts,” the contract containing the arbitration clause is enforceable.’ Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167 (Ala.1999). Alabama’s general contract law permits assent to be *390 evidenced by means other than signature, and, thus, the contract of insurance ■and the arbitration provision contained in it can be enforceable by the parties in the absence of signatures, where the evidence establishes the existence of the agreement. [The defendant insurance company’s] insurance policy is not subject to either of Alabama’s Statutes of Frauds, see Ala.Code §§ 7-2-201 and 8-9-2, nor is it made contingent upon the condition precedent that it be signed by [the plaintiff]. [The plaintiff] .accepted and acted upon [the defendant’s] insurance policy, which contained the arbitration provision, by paying premiums, renewing the policy, and submitting a claim under the policy. Therefore, be-, cause [the plaintiff] ratified the policy, the absence of his signature does hot render the policy, or the arbitration provision contained in it, unenforceable.”
(Footnote omitted.) American Bankers similarly maintains that the policyholders have manifested their assent to arbitration in these cases by accepting and acting upon the insurance policies containing the arbitration provision.
Our caselaw supports American Bankers’ position. Beyond Howard, this Court has considered multiple other appeals in which parties have sought to avoid arbitration provisions in insurance policies by claiming that the arbitration provisions were not disclosed to them or that they never received a copy of the policy containing the arbitration provision. In Ex parte Rager, 712 So.2d 333, 335 (Ala.1998), the plaintiffs argued that they never agreed to arbitrate their claims because their application for insurance did not mention arbitration and because they did not sign the endorsement attached to the policy that contained the arbitration clause. This Court rejected those arguments,' noting that “[m]any parts of an insurance policy are not mentioned in the application” and explaining further that the unsigned endorsement containing the arbitration clause was part of the issued policy because the policy expressly stated that “ ‘[t]his policy with any attached papers is the entire contract between you and the [insurance] Company.’ ” 712 So.2d at 335. See also Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000) (“Under state-law principles of contract interpretation, parties may be bound by documents incorporated by reference.”).
It is unclear exactly what parts of the insurance policy the policyholders acknowledge receiving in this case; however, they have stated in their affidavits only that they did not receive the two identified forms specifically discussing arbitration or any other document purporting to be an arbitration agreement. Thus, they presumably received the rest of the policy American Bankers submits was issued to them, including the declarations page and the written insuring agreement, which provides that “[t]his policy is not complete without the declarations page.” . The declarations page lists forms AJ9821EPC-0608 and N1961-0798 as part of the.included “forms and endorsements.”[2] Although the policyholders claim not to have received forms AJ9821EPC-0608 and N1961-0798, they had some .duty to investigate the contents of those forms because the declarations page indicated that the forms were part of the policy. See, e.g., Alfa Life Ins. Co. v. Colza, 159 So.3d 1240, 1249-50 (Ala.2014) (noting that insurance *391 policyholders have a duty to read the documents provided them and are charged with the knowledge such a reading would impute to them), and McDougle v. Silvernell, 738 So.2d 806, 808 (Ala.1999) (stating that a party to a contract that fails to inform himself or herself of extraneous facts or other documents incorporated into the contract is . nevertheless “bound thereby” (quoting Ben Cheeseman Realty Co. v. Thompson, 216 Ala. 9, 12, 112 So. 151, 153 (1927))). We further note that this Court has also enforced arbitration provisions in insurance policies where the plaintiffs claimed never to have received the written policies containing the provisions. See, e.g., Ex parte Southern United Fire Ins. Co., 843 So.2d 151, 156 (Ala.2002) (enforcing an arbitration provision even though it was claimed that “[the plaintiff] did not receive a copy of either the policy or the arbitration rules referenced in the policy”), and Philadelphia American Life Ins. Co. v. Bender, 893 So.2d 1104, 1109 (Ala.2004) (enforcing an arbitration provision in an insurance policy even though the plaintiff “claims that he did not receive a copy of the policy”).
Finally, we note that this Court has, on other occasions, considered similar cases involving financial agreements other than insurance policies in which parties have challenged arbitration provisions they alleged were subsequently added to the agreements without their express consent or knowledge. We have uniformly recognized that a signature or express consent is not required to give effect to the new arbitration provisions; rather, we have held that the parties effectively manifested their assent to the added provisions by continuing the relationship after the arbitration provision was added. We summarized some of these insurance and non-insurance cases as follows in Providian National Bank v. Screws, 894 So.2d 625, 627 (Ala.2003):
“This Court has previously enforced an arbitration provision added to credit-card agreements - by amendment. See Ex parte Colquitt, 808 So.2d 1018 (Ala. 2001). Further, this Court has continually held that express assent is not required in order for an arbitration provision to be enforceable. SouthTrust Bank v. Williams, 775 So.2d 184, 189 (Ala.2000) (holding that an arbitration provision added to a customer’s account agreement by notice was valid and enforceable); Woodmen of the World Life Ins. Soc’y v. Harris, 740 So.2d 362, 367 (Ala.1999) (holding that-- express assent to an arbitration provision is not required when the arbitration provision is added by amendment); Ex parte Rager, 712 So.2d 333, 335 (Ala.1998) (noting that the inclusion of an arbitration provision is not a material alteration to an insurance policy requiring a signed application); Southern Foodservice Mgmt., Inc. v. American Fid. Assurance Co. 850 So.2d 316 (Ala.2002)(same).”
We note that, like the policyholders-in these cases, the plaintiffs in Ex parte Colquitt, 808 So.2d 1018, 1021 n. 1 (Ala.2001), and Woodmen of the World Life Insurance Society v. Harris, 740 So.2d 362, 366 n. 6 (Ala.1999), claimed not to have seen any notice that would have apprised them of the fact that an arbitration provision was made part of their agreements;
In sum, although the policyholders did not execute stand-alone arbitration agreements or necessarily even read or receive the insurance policies containing the arbitration provisions, they have nevertheless manifested their assent to those policies and, necessarily, the arbitration provisions in them, by accepting and acting upon the policies, inasmuch as they all affirmatively renewed their policies and paid their premiums, thus ratifying the policies. Howard, 775 So.2d at 162-63. *392 See also SouthTrust Bank v. Williams, 775 So.2d 184, 189 (Ala.2000) (stating that parties that “continued the business relationship after the interposition of the arbitration provision” “implicitly assented to the addition of the arbitration provision”). This holding is consistent with our previous caselaw interpreting arbitration provisions in insurance policies.[3] Because the policyholders assented to, and are therefore subject to, the arbitration provision in their insurance policies, we conclude that they agreed to arbitrate the claims asserted in their complaints inasmuch as those claims “aris[e] out of, relat[e] to, [and are] connected] with” those insurance policies.
Having established that the policyholders at least ratified the insurance policies issued to them by American Bankers and that those policies call for arbitration, we must next address whether -the sale of those policies affected interstate commerce so as to require enforcement of the policies’ arbitration provision under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. The policyholders wisely do not argue that American Bankers’ sale of these insurance policies does not affect interstate commerce; rather, they argue only that American Bankers failed to put forth any evidence that would establish that fact. See, e.g., Service Corp. Int'l v. Fulmer, 883 So.2d 621, 629 (Ala.2003) (explaining that, in light of decisions of the Supreme Court of the United States, “a trial court evaluating a contract connected to some economic or commercial activity would rarely, if ever, refuse to compel arbitration on the ground that the transactions lacked ‘involvement’ in interstate commerce”), and Potts v. Baptist Health Sys., Inc., 853 So.2d 194, 199 (Ala.2002) (“The burden of proof was on the [parties moving to compel arbitration] to provide evidence demonstrating that [the subject] contract, or the transaction it evidenced, substantially affected interstate commerce.”).
It appears that, in at least some of these consolidated appeals, American Bankers made an additional evidentiary submission intended to establish that the sale to certain of the policyholders of these insurance policies affected interstate commerce once it became apparent that the policyholders would contest that issue; however, the trial courts thereafter struck those submissions as being tardy. Hence, the policyholders argue that American Bankers has failed to put forth evidence that would satisfy the interstate-commerce requirement. However, even without considering those submissions, it is clear from the undisputed facts and the evidence in the record that these transactions affected interstate commerce. As evidenced by the copies of the insurance policies that are in the record in each case, the policyholders are all Alabama residents and the subject of each insurance policy is property located in Alabama. Those same policies also indicate that American Bankers — the full corporate name is reflected on the policy *393 as American Bankers Insurance Company of Florida — has a Florida address and that the agent for each of the policies is shown as having either a Florida or a Minnesota address.- This diversity of citizenship between the parties is sufficient to establish that the transactions between them affected interstate commerce. See, e.g., America’s Home Place, Inc. v. Rampey, 166 So.3d 655, 661 n. 2 (Ala.2014) (indicating that the interstate-commerce requirement is met when a contract showed on its face that the company constructing a house in Alabama “listed its place of business as being in ‘Hall County, Gainesville, GA’ ”); DecisionQuest, Inc. v. Hayes, 863 So.2d 90, 95 (Ala.2003) (“ ‘ “[A]ll interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of good, person, or information, is a transaction of interstate commerce.””’ (quoting Uncle Ben's, Inc. v. Crowell, 482 F.Supp. 1149, 1154 (E.D.Ark.1980), quoting in turn Furst v. Brewster, 282 U.S. 493, 497, 51 S.Ct. 295, 75 L.Ed. 478 (1931))); and Ex parte Dyess, 709 So.2d 447, 450 (Ala.1997) (“[T]he policy issued by American Hardware [Insurance Group, Inc.,] to Jack Ingram Motors[, Inc.,] involves interstate commerce because the policy was between corporations of different states. Therefore, the Federal Arbitration Act applies.... ”).[4]
Our final inquiry, therefore, is whether the arbitration provision in the subject policies is unconscionable. In Leeman v. Cook's Pest Control, Inc., 902 So.2d 641, 645 (Ala.2004), this Court stated:
“ ‘[T]here is nothing inherently unfair or oppressive about arbitration clauses,’ Coleman v. Prudential Bache Sec., Inc., 802 F.2d 1350, 1352 (11th Cir.1986), and arbitration agreements are not in themselves unconscionable, Ex parte McNaughton, 728 So.2d 592, 597-98 (Ala.1998). Instead, unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proof. Conseco Fin. v. Murphy, 841 So.2d 1241, 1245 (Ala.2002).”
In support of their argument that the arbitration provision in their insurance policies is unconscionable, the policyholders cite Anderson v. Ashby, 873 So.2d 168 (Ala. 2003), for the broad proposition that an arbitration provision is unconscionable when the terms of the provision are grossly favorable to a party that has overwhelming bargaining power, but they otherwise rely entirely upon an August 2013 order entered by an El Paso County, Texas, trial court finding a certain arbitration provision before it to be unconscionable. The arbitration provision in that case, Cardwell v. Whataburger Restaurants, LLC, case no. 2013DCV0910, similarly provided that arbitration would be administered by the American Arbitration Association (“the AAA”); however, the El Paso trial court declared the provision to be unconscionable and refused to enforce it based on its belief that the fees charged by the AAA were too high, regardless of whether they were ultimately paid by the plaintiff or the defendant and that the *394 defendant was essentially trying to .purchase a more favorable forum for the dispute. ,
Of course, any precedential value of the El Paso County court’s judgment is limited to its interpretation of Texas law. See, e.g., Pritchett v. State Farm Mut. Auto. Ins. Co., 834 So.2d 785, 794 (Ala.Civ.App. 2002) (“Any precedential value of the Rhode Island Superior Court’s judgment ... is limited to its interpretation of Rhode Island law.”). However, even that limited precedential value evaporates if the judgment is reversed on appeal, and, in fact, that is the case with the El Paso court’s judgment because, on October 24, 2014 — well before briefs were submitted in these appeals — the Texas Court of Appeals reversed the El Paso trial court’s order based on “the trial court’s clear failure to properly analyze and apply the law of un-conscionability.” Whataburger Rests. LLC v. Cardwell, 446 S.W.3d 897, 913 (Tex.App. 2014).
' Moreover, to the extent the policyholders are arguing that the arbitration provision is' unconscionable because of the financial’burden arbitration would impose upon them, their argument is not supported by the evidence in the record and, in many respects, is contradicted by the evidence in the record. First, there is no evidence in the record of the policyholders’ financial status that would indicate that they cannot afford to pay the costs of arbitration. See Leeman, 902 So.2d at 651-52 (noting that there was no evidence in the. record of the plaintiffs’ income or wealth that would indicate that they would not be able to pay the fees and costs of arbitration and concluding that the plaintiffs accordingly “have not demonstrated that the arbitration provision in [their contract with the defendant] is unconscionable on that basis”). Second, the arbitration provision in the policyholders’ policies expressly provides that “[t]he cost[s] of all arbitration proceeding^] shall be paid by [American Bankers], with the exception of the cost of representation of [the policyholder]” and that arbitration proceedings in’ each case “shall be conducted in thé county where [the policyholder] residets], unless another location is mutually agreed upon in writing.”
In Commercial Credit Corp. v. Leggett, 744 So.2d 890 (Ala.1999), this Court considered an argument that an arbitration provision was unconscionable for financial-hardship reasons because it obligated the party initiating arbitration to pay-$125, while the defendant company agreed to pay for the first eight hours of the arbitration proceedings, the losing party to then be responsible for paying the costs associated with any additional proceedings, if such proceedings were necessary. We stated:
“It is difficult to see how a party who truly believes she has a meritorious cause of action can view these provisions as particularly onerous. [The plaintiff] would initially have to pay only $125.00 to commence the process. Subsequently, the defendants would pay for the first day of proceedings, regardless of the outcome. The losing party would then pay for the remainder of the proceedings. In fact, the only parties disadvantaged by these cost provisions are the losing parties — whoever they might be.
“In short, th[is] arbitration provision[ ] [is] not ‘unreasonably favorable to [the defendants],’ nor [is it] ‘oppressive, one-sided, or patently unfair.’ Layne [v. Garner], 612 So.2d [404,] 408 [(Ala. 1992) ].”
744 So.2d at 898. The arbitration provision in the instant cases places even more of the cost burden for arbitration upon American Bankers, and, in light of that fact and the record before us, we find the *395 policyholders’ complaint of excessive costs to be disingenuous.[5] The policyholders have failed to meet their burden of proof as to unconscionability; accordingly, we decline to invalidate the arbitration provision on that basis.
IV.
The policyholders sued American Bankers, asserting various claims based on American Bankers’ sale to them of insurance policies allegedly providing more coverage than the. policyholders needed and could ever possibly benefit from. The trial courts thereafter denied American Bankers’ subsequent motions to compel arbitration of the claims asserted against it by the policyholders. We now reverse those orders, denying the motions to compel arbitration, based upon our holdings that the policyholders manifested their assent to the arbitration provision in their policies by continuing to renew the policies, that the sale of the policies affected interstate commerce, and that the arbitration provision in the policies is not unconscionable. These causes are accordingly remanded for the trial courts to enter new orders granting American Bankers’ motions to compel arbitration.
1131244 — REVERSED AND REMANDED.
1131245 — REVERSED AND REMANDED.
1131264 — REVERSED AND REMANDED. .
1131384 — REVERSED AND REMANDED.
1131514-AREVERSED AND REMANDED.
BOLIN, PARKER, SHAW, MAIN, and WISE, Jj., concur.
BRYAN, J., concurs in the result.
MOORE, C.J., and MURDOCK, J., dissent.

. The policy issued to Moody, the plaintiff in appeal no. 1131264, included form AJ8654EXX-0604 instead of form AJ9821EPC-0608; however, those two forms appear to be identical in all material ways. For convenience, we hereinafter include Moody’s form in any reference to form AJ9821EPC-0608.

., The declarations page lists forms AJ9821EPC-0608 and N196R0798 as forms "AJ9821EPC 06/08” and "N1961 07/98,” respectively. With regard to Moody, the declarations page in her policy lists form AJ8654EXX-0604 as' form "AJ8654EXX 06/04,”.

. We note that the policyholders have not asked us to overrule Howard, Ex parte Rager, Ex parte Southern United, Bender, or other cases in which this Court has reached similar holdings. Indeed, although American Bankers discussed most of these cases in the initial brief it filed with this Court, the policyholders have not responded to American Bankers' discussion of those cases or otherwise attempted to distinguish the cases in their response brief, much less asked us to overrule them. “Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so.” Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 926 (Ala.2002), See also Clay Kilgore Constr., Inc. v. Buchalter/Grant, L.L.C., 949 So.2d 893, 898 (Ala.2006) (noting the absence of a specific request by the appellant to overrule existing authority and stating that, "[e]ven if we would be amenable to such a request, we are not inclined to abandon precedent without a specific invitation to do so”).

. We further note that the policyholders have filed stipulations indicating that they are not seeking, and will not accept, any award of damages that exceeds $74,999.99. These stipulations were presumably filed in recognition of the diversity of citizenship that exists between the policyholders and American Bankers and a desire to avoid the possibility of the underlying cases being removed to federal court pursuant to 28 U.S.C. § 1332 (granting federal district courts original jurisdiction over all civil actions involving citizens of different states where the value of the dispute exceeds $75,000).

. We recognize that the arbitration provision in these cases also authorizes the arbitrator to require the policyholder to pay all arbitration costs if it is determined that the policyholder’s claim "is without substantial justification.” However, similar authority is held by a trial court judge, who can require a party to pay not only court costs, but also attorney fees. See § 12-19-272(c), Ala.Code 1975 ("The court shall assess attorneys' fees and costs against any party or attorney if 'the court, upon the motion of any patty or on its own motion, finds that ah attorney • or party brou'ght an action or any part thereof, or asserted any claim or defense therein, that is without substantial justification_” (emphasis added)).