Richard MATTHEWS, etc., Plaintiff,

v.

AT & T OPERATIONS, INC.,
et al, Defendants.

Case No. CV 10–HGD–287–S.

United States District Court,
N.D. Alabama,
Southern Division.

Feb. 9, 2011.

Jere L. Beasley, W. Daniel Miles, III, Timothy R. Fiedler, Beasley Allen Crow Methvin Portis & Miles PC, Montgomery, AL, for Plaintiff.

J. Henry Walker, IV, John Jett, Kilpatrick Townsend & Stockton LLP, David F. Cooper, William W. Downs, Kitchens Kelly Gaynes PC, Atlanta, GA, Jeffrey E. Holmes, Johnston Barton Proctor & Rose LLP, Birmingham, AL, J. Dorman Walker, Balch & Bingham LLP, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

ROBERT B. PROPST, Senior District Judge.

This cause comes on to be heard on the objection of the plaintiff to the Report and Recommendation ("R & R") of the magistrate judge filed on December 10, 2010. The issue is whether the defendants' motion to compel arbitration should be granted.

The issue revolves around the following language in the Residential Services Agreement ("RSA") referenced in the R & R:

AT & T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating *to any aspect of the relationship between us,*

whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory;

- claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);
- claims that are currently the subject of purported class litigation in which you are not a member of a certified class; and
- claims that may arise after the termination of this Agreement.

In this Section, references to "AT & T", "you", and "us" include our respective subsidiaries, affiliates, agents, officers, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us.... This arbitration provision shall survive termination of this Agreement.

(Doc. 25–1, § 9a (some emphasis in original)).

Although the plaintiff argues that the RSA is inapplicable to this dispute, he states the following in his objection:

(1) "There was then change of service that affected the related RSA, ...;

(2) "AT & T created a contract that *in one sense was broad and far reaching* so as to allow it to commit tortious and criminal acts with impunity...." The fact that an available remedy may be limited to arbitration does not mean that there can be violations (alleged) with impunity.

This court will adopt and apply the R & R and will not address all of its discussion. This court does further note:

■ The Alabama Supreme Court has repeatedly stated that the words "relating to in the arbitration context are given a broad construction." *StoneMor Ala., LLC v. Summers,* 36 So.3d 5, 8 (Ala.2009) (internal quotation marks and citations omit-

ted). On the other hand, "the phrase 'arising under' in an arbitration agreement contemplates a narrow scope of operation." *Cato,* 968 So.2d at 7 (citing *Koullas v. Ramsey,* 683 So.2d 415, 416 (Ala.1996)). The RSA's arbitration provision applies to "claims arising out of ... *any aspect of the relationship between us,*" which is in addition to the provision's inclusion of the term "relating to." (Doc. 25–1, § 9a (emphasis added.))

All defendants invoke the terms of the arbitration agreement; that is (1) BellSouth Telecommunications, Inc. d/b/a AT & T Alabama; (2) AT & T Operations, Inc.; and (3) Innotrac Corporation. BellSouth was the signatory to the RSA and therefore may clearly invoke the arbitration agreement. Defendants argue that the arbitration agreement explicitly provides that defendants AT & T Operations and Innotrac were intended to be included. In particular, they argue that defendant AT & T Operations is an "affiliate" and defendant Innotrac is an "agent," and that the two would squarely fall within the definitions as used in the arbitration provision. (*See* Doc. 25–1, § 9a ("In this Section, references to 'AT & T', 'you', and 'us' include our respective subsidiaries, affiliates, agents, agents....")).

In interpreting an arbitration provision, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, *whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis added; footnote omitted). Thus, a motion to compel arbitration should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the

asserted dispute. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

*Olshan Found. Repair Co. v. Schultz*, No. 1090800, — So.3d ——, ——, 2010 WL 4034866, at *5, 2010 Ala. LEXIS 200, at *14 (Ala. Oct. 15, 2010) (internal quotation marks omitted) (quoting *Elizabeth Homes, L.L.C. v. Cato*, 968 So.2d 1, 7 (Ala.2007)).

In this case, the arbitration agreement provides: "AT & T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes ... claims arising out of or relating to any aspect of the relationship between us...." (Doc. 25–1, § 9a (emphasis in original)). Such an agreement to arbitrate is quite similar to one addressed by the Alabama Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton* which applied to "all controversies which may arise between us...." 719 So.2d 201, 202 (Ala.1998). As to the scope of that provision, the Alabama Supreme Court held:

> The ... agreement contains a broadly worded arbitration clause that is clear on its face—it covers "any" and "all" controversies that may arise between [the parties]—and, like unambiguous statutes, it leaves no room for interpretation....
>
> ....
>
> ... [W]e conclude that the language of the arbitration provision in the ... agreement entered into between [the parties] is sufficiently broad to include *any* and *all* controversies between them, regardless of the kind of controversy or the date on which the controversy occurred.

Finally, Alabama courts have consistently followed the following unconscionability standard:

> This Court has stated that " '[a]n unconscionable ... contractual provision is defined as a ... provision "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." ' " *Southern United Fire Ins. Co. v. Howard*, 775 So.2d 156, 163 (Ala. 2000) (quoting *Layne v. Garner*, 612 So.2d 404, 408 (Ala.1992), quoting in turn *Lloyd v. Service Corp. of Alabama*, 453 So.2d 735, 739 (Ala.1984), and *Hume v. United States*, 132 U.S. 406, 410, 10 S.Ct. 134, 33 L.Ed. 393 (1889))....

*Blue Cross Blue Shield of Ala. v. Rigas*, 923 So.2d 1077, 1086 (Ala.2005). That definition does not fit here.

This court will overrule the objection.[1]

## ORDER

In accordance with a Memorandum Opinion filed contemporaneously herewith, the court **ADOPTS** and **APPROVES** the Report and Recommendation of the magistrate judge filed on December 10, 2010. The court **OVERRULES** the objection thereto of the plaintiff filed on December 22, 2010. The defendants' Motion to Compel Arbitration filed on April 26, 2010 and the joinders thereto are **GRANTED**. The arbitration process is to be initiated by the defendants within ten (10) calendar days. Further proceedings in this case are **STAYED** pending arbitration.

## *REPORT AND RECOMMENDATION*

HARWELL G. DAVIS, III, United States Magistrate Judge.

Plaintiff, Richard Matthews, is seeking to proceed in his second amended com-

---

1. *Compare Jenkins v. First Am. Cash Advance of GA., LLC*, 400 F.3d 868, 877–78 (11th Cir. 2005).

plaint (Doc. 16), on behalf of himself and others similarly situated, against BellSouth Telecommunications, Inc. d/b/a AT & T Alabama (BellSouth), AT & T Operations, Inc. (AT & T Operations) and Innotrac Corporation (Innotrac) on claims for fraud, civil conspiracy, conversion, breach of the implied covenant of good faith and unjust enrichment. Now pending before the court is the Motion to Compel Arbitration and Dismiss or Stay Pursuant to the Federal Arbitration Act filed by AT & T Operations and BellSouth.[1] (Doc. 24). The Motion to Compel Arbitration has been joined in by Innotrac. (*See* Doc. 37, Motion to Join, and docket entry of June 22, 2010, granting Motion to Join). Also pending are a Motion to Dismiss filed by Innotrac (Doc. 22) and a Motion to Dismiss filed by AT & T Operations and BellSouth (Doc. 23). Because of its potential to moot consideration of the motions to dismiss, the arbitration motion is considered first.

In his complaint, plaintiff alleges that on or about August 1, 2009, he received a package containing a Clarity cordless telephone with a digital answering machine and expandable headset. The package was delivered by United Parcel Service from Innotrac Corporation.

According to plaintiff, he did not order or request this equipment. After receiving it, he contacted AT & T and asked what authority it had to send this unrequested equipment. AT & T stated that it could not answer the question, but referred him to Innotrac's telephone number where he could call and request the equipment. AT & T also stated that, if he did not return the equipment, he would be billed for it through his residential telephone service. The following month, the equipment was charged to plaintiff's telephone bill.

Furthermore, plaintiff asserts that in September 2009, his residential telephone package was changed from the Complete Choice package to the Complete Choice Enhanced package. This was accomplished without plaintiff's authorization or knowledge. This caused his telephone bill to increase by $18.00 per month.

As a result, plaintiff called AT & T and asked what authority it had to change his telephone service. He was told that AT & T was not sure why his service was changed. He was also told that customer authorization was required to change telephone services.

### ARBITRATION AGREEMENT

For purposes of its motion to compel arbitration, AT & T submitted the declaration of Elizabeth Stockdale. Stockdale is a Senior Product Marketing Manager with AT & T Operations. According to her, Matthews was an AT & T customer who received residential telephone services pursuant to the AT & T Residential Services Agreement (RSA) during the August–September 2009 time period referenced in the Second Amended Class Action Complaint. (Doc. 25, Stockdale Decl., at ¶ 3). The RSA contains an arbitration agreement. Notification of the arbitration agreement is set out in all capital letters on its first page. (*Id.* at ¶ 7).

Section 9 of the RSA contains a summary of the arbitration conditions, including statements that disputes will be resolved **"through binding arbitration or small claims court instead of in courts of general jurisdiction"** and that **"[a]ny arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not**

---

**1.** These defendants sometimes will be referred to collectively in this Report and Recommen-

dation as "AT & T."

permitted." (*Id.* at ¶ 8 and at Ex. A, RSA, § 9) (emphasis in original).

Section 9 of the RSA also states, in pertinent part:

AT & T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

- claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);

- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and,

- claims that may arise after the termination of this Agreement.

In this Section, references to "AT & T," "you," and "us" include our respective subsidiaries, affiliates, agents, officers, employees, predecessors in interest, successors, and assigns, as well as all authorized and unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us.

Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this agreement, you and AT & T are each waiving the right to a trial by jury and to participate in a class action.** This agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration

shall survive termination of this Agreement.

(Doc. 25 at Ex. A, § 9a).

The AT & T dispute resolution process also features a provision wherein AT & T agrees that it will pay all AAA filing, administration and arbitrator fees, unless the arbitrator finds that the claim is substantively frivolous or brought for an improper purpose. (*Id.* at § 9c). It also provides that, if the arbitrator issues an award in the customer's favor that is "greater than the value of AT & T's last written settlement offer made before an arbitrator was selected, then AT & T will pay you the amount of the award or $10,000 ('the alternative payment') whichever is greater...." (*Id.* at § 9d). In such a case, the Agreement also specifies that AT & T will pay double attorney's fees. (*Id.* at § 9d-e). It also states that the arbitration will take place in the county of the customer's billing address and that a customer may attend the arbitration by telephone for any claim for $10,000 or less. (*Id.* at § 9c).

## ANALYSIS AND RECOMMENDATION

Defendants BellSouth and AT & T Operations assert that plaintiff should be compelled to arbitrate his claims against them as required by the arbitration agreement contained in his RSA. Innotrac also seeks to have plaintiff's claims against it submitted to arbitration. Plaintiff asserts that his claims and the claims of the Class are not subject to the RSA. According to Matthews, his claims are separate and apart from the RSA and the RSA is void as to all defendants as being procedurally and substantively unconscionable.

■ Matthews asserts that the arbitration agreement is unenforceable because it was not applicable to a subsequently-created, new contract that was created by BellSouth and AT & T Operations, with the assistance of Innotrac. He is referring to

a separate Retail Sales Installment Contract which reflected his purchase of the Innotrac Clarity telephone equipment. This contract merely reflects that he is being charged $131.71 for this telephone and the amount due in each of five monthly payments that will be included in his AT & T phone bill. Plaintiff states that he paid for this equipment despite his claim that it was not solicited by him. He also states that his telephone bill was changed to reflect an enhanced service that he did not request.

Thus, according to plaintiff, the new Retail Installment Contract, which contains no dispute resolution language, somehow vitiates his RSA with AT & T. Matthews asserts that the arbitration agreement applies only to issues arising from the purchase and financing of defendants' telephone plan and does not cover fraud issues that arose out of a later, unconsented and defendant-originated unilateral contract for a different plan and new equipment, citing *Capitol Chevrolet & Imps., Inc. v. Payne,* 876 So.2d 1106 (Ala.2003).

Plaintiff also asserts that AT & T Operations and Innotrac were not parties to the original RSA that included only BellSouth, citing *Ex parte Discount Foods, Inc.,* 789 So.2d 842 (Ala.2001), and *Alabama Catalog Sales v. Gloria Harris,* 794 So.2d 312 (Ala. 2000).

The language of the RSA provides that "AT & T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted." (Doc. 25 at Ex. A, § 9a) (emphasis in original). It further states that the arbitration agreement applies to "claims arising out of or relating to any aspect of the relationship between us." (*Id.*). Thus, the plain language of the arbitration agreement appears to cover plaintiff's dispute with AT & T. The *Capitol Chevrolet* case cited by plaintiff and referenced *supra,* does not apply here because

the plain language of the arbitration agreement in that case limited its applicability to disputes arising from the initial sale of an automobile. 876 So.2d at 1110. Here, the RSA unambiguously applies to disputes arising between AT & T and Matthews, including "claims that may arise after the termination of this Agreement." (Doc. 25 at Ex. A, § 9a). The addition of the charge for the telephone and the charge for the enhanced service package are both directly tied to plaintiff's telephone service that was covered by the RSA. The RSA unambiguously applies to the billing relationship between the parties. (Doc. 25 at Ex. A, § 4).

There is no basis for concluding that the RSA somehow has been superseded by the Retail Installment Contract. Matthews' claim centers, in part, around his assertion that he did not order the Clarity telephone. He maintains that he was "coerced" into entering into the Retail Installment Contract, although why this is so is not particularly clear. Nonetheless, he cannot on the one hand allege that the Retail Installment Contract is void because he was coerced into entering into that agreement and, on the other, attempt to maintain that it is a valid contract that somehow superseded the RSA with AT & T.

In that respect, it is important to note that there is no provision in the Retail Installment Contract that purports to supersede the RSA. Thus, there is no reason to conclude that the arbitration clause is not applicable even if the parties had entered into a subsequent contract regarding the purchase of the Clarity telephone because it contains no terms that are inconsistent with the operation of the arbitration agreement.

Likewise, nothing in the terms of the Retail Installment Contract pertaining to the Clarity telephone have any application

to plaintiff's claim about being charged for the enhanced telephone service. The dispute regarding the putative "coerced" purchase of the Clarity telephone and the dispute over the charges imposed for the unrequested enhanced telephone service are two completely different matters.

■■■ Petitioner's unconscionability argument also fails. Unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proving unconscionability. *Conseco Fin. v. Murphy,* 841 So.2d 1241, 1245 (Ala.2002). A contractual agreement to arbitrate may be found invalid only "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under Alabama law, the burden of presenting substantial evidence indicating that the arbitration provision in the policy is unconscionable is on the plaintiff. *See Ex parte Napier,* 723 So.2d 49, 53 (Ala.1998). "An unconscionable ... contractual provision is defined as a ... provision 'such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' " *Layne v. Garner,* 612 So.2d 404, 408 (Ala. 1992) (quoting *Lloyd v. Service Corp. of Alabama,* 453 So.2d 735, 739 (Ala.1984), and *Hume v. United States,* 132 U.S. 406, 410, 10 S.Ct. 134, 33 L.Ed. 393 (1889)). In *Layne v. Garner,* the Alabama Supreme Court set out four factors it considered important in determining whether a contract was unconscionable:

> In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive,

one-sided, or patently unfair terms in the contract.

612 So.2d at 408.

The Alabama Supreme Court has recognized a distinction between "substantive unconscionability" and "procedural unconscionability" and categorized the above factors as either substantive or procedural. Substantive unconscionability

> "relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the non-drafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction."

*Ex parte Thicklin,* 824 So.2d 723, 731 (Ala. 2002) (emphasis omitted) (quoting *Ex parte Foster,* 758 So.2d 516, 520 n. 4 (Ala. 1999), quoting in turn 8 Richard A. Lord, *Williston on Contracts* § 18:10 (4th ed.1998)). *See also Leeman v. Cook's Pest Control, Inc.,* 902 So.2d 641 (Ala.2004) (discussing and rejecting claim of unconscionable arbitration clause).

■■■ Procedural unconscionability, on the other hand, "deals with 'procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction.' " *Thicklin,* 824 So.2d at 731 (quoting *Foster,* 758 So.2d at 520 n. 4, quoting in turn 8 *Williston on Contracts* § 18:10).

To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability. "[A] finding of a procedural abuse, inherent in the formation process, must be coupled as well with a substantive abuse." 8 *Williston on Contracts* § 18:10 at 62.

█ Plaintiff has made no showing that the arbitration provision is procedurally unreasonable. The burden of demonstrating that the product cannot be obtained without signing an arbitration agreement is on the party asserting unconscionability. *Leeman*, 902 So.2d at 645 ("unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proof" (citing *Conseco Fin. v. Murphy*, 841 So.2d at 1245)).

Plaintiff asserts that the arbitration clause is substantively unconscionable because it deprives him of meaningful recourse and recovery. However, a review of that clause reflects that this is simply not so. As a general rule, the Eleventh Circuit has held that arbitration agreements precluding class action relief are valid and enforceable. *See Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 877–78 (11th Cir.2005); *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 819 (11th Cir.2001) (holding "a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA"). Other federal circuit courts have similarly enforced arbitration agreements despite the fact that class-wide relief was unavailable. *See, e.g., Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir.2002) (rejecting the borrower's argument "that the Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain her legal representation given the small amount of her individ-

ual damages"); *Johnson v. West Suburban Bank*, 225 F.3d 366, 369 (3d Cir.2000) (holding arbitration "clauses are effective even though they may render class actions to pursue statutory claims under the TILA or the EFTA unavailable"); *cf. Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir.2003) ("The Arbitration Agreement at issue here explicitly precludes the [borrowers] from bringing class claims or pursuing 'class action arbitration,' so we are therefore 'obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis.'") (citations omitted). These decisions turn, in part, on the fact that the arbitration agreements in each case, while excluding class actions, do not cut off the plaintiff from all practical avenues of relief.

In *Leonard v. Terminix Int'l Co.*, 854 So.2d 529 (Ala.2002), the Alabama Supreme Court concluded that the plaintiffs' challenge to an arbitration clause was one of "unconscionability by reason of economic feasibility." *Id.* at 537. Noting that the costs of arbitration included: "(1) a $500 arbitration filing fee; (2) a minimum $150 administrative fee per party; (3) an administrative fee of $150–$250 per day per party for each hearing date; (4) one-half of the average arbitrator's fee of $700 per day; (5) one-half the cost of the charge for a meeting room; and (6) the cost of an attorney," *id.* at 535, the court sided with the plaintiffs' contention that "the arbitration clause mandates a procedure involving costs so great in comparison to the potential recovery that the injured person is effectively precluded from a remedy" *id.* at 537. Because the agreement precluded class actions and limited damages by prohibiting recovery for "indirect, special, and consequential damages or loss of anticipated profits," the Alabama Supreme Court concluded that the arbitration clause in *Leonard* was substantively unconscionable. *Id.* at 538. However, similar facts and

circumstances have not been established in this case.

The arbitration agreement in this case requires AT & T to pay all AAA filing, administration and arbitrator fees, unless the arbitrator finds that the claim is substantively frivolous or brought for an improper purpose. If the arbitrator issues an award in the customer's favor that is "greater than the value of AT & T's last written settlement offer made before an arbitrator was selected, then AT & T will pay you the amount of the award or $10,000, whichever is greater." In such a case, the Agreement also specifies that AT & T will pay double attorney's fees. It also states that the arbitration will take place in the county of the customer's billing address and that a customer may attend the arbitration by telephone for any claim for $10,000 or less. Thus, any claim that consumers likely would be unable to obtain legal representation without the class action vehicle is unfounded. Likewise, arbitration costs would not be prohibitively expensive.

The court concludes that plaintiff has not met his burden of showing that the arbitration provision included in the RSA is unenforceable or inapplicable. The arbitration provision is neither substantively nor procedurally unconscionable. Therefore, it is enforceable as a matter of contract law.

■ Plaintiff also argues that the arbitration agreement applies only to Bell-South (AT & T Alabama) and not to AT & T Operations or Innotrac. However, Bell-South, AT & T Operations, and Innotrac assert that the agreement to arbitrate encompasses them all. They assert that, because the RSA states that it applies to "AT & T," which is defined to include AT & T's "respective subsidiaries, affiliates, agents, officers, employees, predecessors in interest, successors and assigns, . . ." (Doc. 25, Ex. A, § 9a), AT & T Operations

and Innotrac may compel arbitration of the claims against them as well. According to the Alabama Supreme Court:

Normally, in order to have a valid arbitration provision, there must be an agreement to arbitrate, and if no agreement exists, then a party cannot be forced to submit a dispute to arbitration. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The question whether one has assented to an arbitration provision is governed by ordinary principles of a state's common law and statutory law governing the formation of contracts. *See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Assent to arbitrate is usually to be manifested through a party's signature on the contract containing the arbitration provision. However, both Federal courts and Alabama courts have enforced exceptions to this rule, so as to allow a nonsignatory, and even one who is not a party, as to a particular contract, to enforce an arbitration provision within that same contract. Two such exceptions apply to the present case. The first is an exception under a theory of equitable estoppel for claims that are so "intimately founded in and intertwined with" the claims made against a party that is a signatory to the contract. *See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir.1993) (quoting *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,* 741 F.2d 342, 344 (11th Cir. 1984)); *see also Ex parte Napier,* 723 So.2d 49 (Ala.1998); *Ex parte Gates,* 675 So.2d 371 (Ala.1996). The second exception arises from a third-party-beneficiary theory that affords the third party all the rights and benefits, as well as the burdens, of that contract, including those associated with arbitration. *See*

*Ex parte Dyess,* 709 So.2d 447 (Ala. 1997); *Ex parte Warren,* 718 So.2d 45 (Ala.1998); *Georgia Power Co. v. Partin,* 727 So.2d 2 (Ala.1998); *Infiniti of Mobile, Inc. v. Office,* 727 So.2d 42 (Ala. 1999); *Colonial Sales–Lease–Rental, Inc. v. Target Auction & Land Co.,* 735 So.2d 1161 (Ala.1999); *see also McPheeters v. McGinn, Smith & Co.,* 953 F.2d 771 (2d Cir.1992); *O'Connor v. R.F. Lafferty & Co.,* 965 F.2d 893 (10th Cir.1992); *In re Prudential Ins. Co. of America Sales Practice Litigation All Agent Actions,* 133 F.3d 225 (3d Cir. 1998); *MS Dealer Service Corp. v. Franklin,* 177 F.3d 942 (11th Cir.1999).

I.   Equitable–Estoppel Exception

In order for a party to be equitably estopped from asserting that an arbitration agreement cannot be enforced by a nonparty, the arbitration provision itself must indicate that the party resisting arbitration has assented to the submission of claims against nonparties— claims that would otherwise fall within the scope of the arbitration provision— to arbitration. *See Ex parte Napier,* 723 So.2d at 53. All that is required is (1) that the scope of the arbitration agreement signed by the party resisting arbitration be broad enough to encompass those claims made by that party against nonsignatories, or that those claims be "intimately founded in and intertwined with" the claims made by the party resisting arbitration against an entity that is a party to the contract, and (2) that the description of the parties subject to the arbitration agreement not be so restrictive as to preclude arbitration by the party seeking it. *See Id.* In other words, the language of the arbitration agreement must be so broad that the nonparty could assert that in reliance on that language he believed he had the right to have the claims against him submitted to arbitration, and, there-fore, that he saw no need to enter into a second arbitration agreement.

\*     \*     \*

In most of the cases that have come before this Court on an equitable-estoppel claim, we have not allowed the claims to be arbitrated, because the language of the arbitration provisions limited arbitration to the signing parties, so that there had been no assent on the part of the resisting party to arbitrate claims against nonsignatories. *See First Family Fin. Servs., Inc. v. Rogers,* 736 So.2d 553 (Ala.1999); *Med Center Cars, Inc. v. Smith,* 727 So.2d 9 (Ala.1998); *Ex parte Isbell,* 708 So.2d 571 (Ala.1997); *Ex parte Martin,* 703 So.2d 883 (Ala. 1996); *Ex parte Jones,* 686 So.2d 1166 (Ala.1996); *Ex parte Stallings & Sons, Inc.,* 670 So.2d 861 (Ala.1995); *see also* David F. Sawrie, *Equitable Estoppel and the Outer Boundaries of Federal Arbitration Law: The Alabama Supreme Court's Retrenchment of an Expansive Federal Policy Favoring Arbitration,* 51 Vand.L.Rev. 721 (1998). In other words, within these arbitration provisions references to the parties specifically limited the claims that would be arbitrable under those provisions. For example, the arbitration agreement at issue in *Med Center Cars* read:

"BUYER HEREBY ACKNOWL-EDGES AND AGREES THAT ALL DISPUTES AND CONTROVER-SIES OF EVERY KIND AND NA-TURE BETWEEN BUYER AND SELLER ARISING OUT OF OR IN CONNECTION WITH THE PUR-CHASE OF THIS VEHICLE WILL BE RESOLVED BY ARBITRATION WITH THE PROCEDURE SET FORTH ON THE REVERSE SIDE OF THIS BUYER'S ORDER."

*Med Center Cars,* 727 So.2d at 13. (Emphasis added.) This Court wrote:

"The language of the arbitration clauses in this case [is] not broad enough to encompass claims against the nonsignatories. The written arbitration agreements in this case expressly limit the scope of the agreements to 'disputes, claims, and controversies' arising between the 'Buyer' and the 'Seller' only.... Therefore, the nonsignatories have no standing to seek enforcement of those arbitration agreements."

*Id.* at 19. Because the agreement in *Med Center Cars* limited the claims that might be submitted to arbitration to those between the "buyer" and the "seller," the buyer, who was resisting arbitration, could not be found to have assented to have his claims against a nonparty lender submitted to arbitration. *Med Center Cars* applied the rule that if the arbitration provision is specifically limited to claims that arise between the parties to the contract, then any nonparties will not be able to enforce the arbitration agreement.

However, this Court has also held that the language of other arbitration agreements was sufficiently broad to include claims against nonparties, and in regard to such agreements it has allowed nonparties to enforce the arbitration provisions against parties to the contract. *See Ex parte Napier*, 723 So.2d 49 (Ala. 1998); *Ex parte Gates*, 675 So.2d 371; *see also* Sawrie, *Equitable Estoppel and the Outer Boundaries of Federal Arbitration Law: The Alabama Supreme Court's Retrenchment of an Expansive Federal Policy Favoring Arbitration,* 51 Vand. L.Rev. 721. For example, the arbitration provision in *Napier* read:

"21. ARBITRATION: All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto [sic] the contrary, Assignee retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by

the Manufactured Home or to foreclose on the Manufactured Home. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision."

*Napier*, 723 So.2d at 51. (Emphasis added.) That arbitration provision in *Napier* contained no references to the parties that would impose a limitation on what claims would be arbitrated. We held that the provision was broad enough to include claims that were related to the contract because the language was sufficient to indicate that the party resisting arbitration had assented to submit its claims against nonparties— claims that otherwise would fall within the scope of the provision—to arbitration. *Id.* at 54.

*Ex parte Stamey,* 776 So.2d 85, 88–91 (Ala. 2000).

In the present case, the claims made by plaintiff are the same for all three defendants. This is partly the basis for plaintiff's attempt to seek class action status. All claims surround the billing for the Clarity telephone and for the enhanced telephone service. The claims made against AT & T Operations and Innotrac are so "intimately founded in and intertwined with" the claims made against BellSouth, which is a signatory to the contract, that plaintiff is equitably estopped from refusing to arbitrate the claims against them as well.

This very point was addressed in *E.I. DuPont de Nemours & Co. v. Rhone Pou-*

*lenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187 (3d Cir.2001), where the United States Court of Appeals for the Third Circuit noted that one of the theories relied upon to obtain arbitration was that "courts have bound a signatory to arbitrate with a non-signatory 'at the nonsignatory's insistence because of "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations."'" 269 F.3d at 199 (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir.1993)) (quoting in turn *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,* 741 F.2d 342, 344 (11th Cir.1984)).

Likewise, the description of the parties subject to the arbitration agreement is not so restrictive as to preclude arbitration of plaintiff's claims against AT & T Operations and Innotrac. The arbitration agreement encompassed "all disputes and claims between us," and "us" included BellSouth and its agents and affiliates. Plaintiff has lumped all his claims against these three defendants into one basket. The complaint repeatedly refers to the acts of the "Defendants" without distinction. Plaintiff clearly anticipates that AT & T Operations and Innotrac are agents or affiliates of BellSouth because the complaint asserts the same causes of action against BellSouth and the other two defendants for the same alleged conduct, arising out of the same transaction. *See Kenworth of Mobile, Inc. v. Dolphin Line, Inc.,* 988 So.2d 534, 543–45 (Ala.2008).

Because both parts of the test set out in *Stamey, supra,* have been met, Matthews is equitably estopped from asserting that the arbitration clause cannot be enforced by AT & T Operations and Innotrac.

Thus, it is RECOMMENDED that defendants' motions to compel arbitration be GRANTED and that this matter be DISMISSED WITHOUT PREJUDICE.[2]

### NOTICE OF RIGHT TO OBJECT

The parties are DIRECTED to file any objections to this Report and Recommendation within a period of fourteen (14) days from the date of entry. Any objections filed must specifically identify the findings in the magistrate judge's recommendation objected to. Frivolous, conclusive, or general objections will not be considered by the district court.

Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982). *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982). *See also Bonner v. Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 10th day of December, 2010.

2. Because the undersigned is recommending that the motion to compel arbitration be granted, there is no need to address the pending motions to dismiss.