MOORE, Chief Justice.
PNC Bank, National Association, and Sonja Moore-Dennis separately appeal the order of the Mobile Circuit Court denying their motion to compel arbitration as to Joseph A. Franklin’s claims against them. For the reasons stated herein, we affirm the order of the trial court.

I. Facts and Procedural History

Franklin had three bank accounts with the predecessor bank to PNC Bank, RBC Bank (USA), before RBC Bank merged with PNC Bank. Shortly before the merger, PNC Bank, in January 2012, allegedly mailed a welcome letter and a PNC Bank Account Agreement (“the account agreement”) to Franklin at his home in Mobile. *1133 After the two banks merged, Franklin’s accounts were converted to PNC Bank accounts on March 2, 2012. The account agreement did not contain an arbitration provision. However, the account agreement did provide, in relevant part:
“STATEMENTS
“We will make available or send to you a monthly statement (whether in paper form, or if authorized by you, in electronic form)....
[[Image here]]
“JOINT ACCOUNTS
“To be considered a joint depositor, you must have signed the signature card for the Account. Notice provided by us to any one joint owner shall be considered notice to all joint owners.
[[Image here]]
“AMENDMENT, WAIVER
“We reserve the right to amend this Agreement ... from time to time. Unless such change is favorable to you or is required by an emergency situation (in which case we shall give you such notice as we may deem practicable), an amendment will become effective 30 days (or such later time if required by law) after notice of the amendment is posted in our branches, or by such other method of notice as we may deem appropriate or as may be specifically required by applicable law. If this is a joint Account, then notice of an amendment provided to one joint depositor shall be deemed to be notice to all joint depositors.
[[Image here]]
“NOTICES
“Any written notice that you give to us is effective when we have actually received it. Any written notice that , we give to you is effective when it is deposited in the United States mail and will be sent to your last known address which appears in our records.
[[Image here]]
“GENERAL PROVISIONS
“1. The signing of a signature card, your request for a card, the use of a card, the use of Online Banking services and/or the use of Online Banking through Quicken® shall mean that you agree to the content of this Agreement and to any modification thereof. Any such modification shall become effective and be binding 15 calendar days (or such later time-if required by law) after notice of the modification is posted in our banking centers, or by such other method of notice as we may deem appropriate or as may be specifically required by the applicable law.”
(Boldface type and capitalization in original.) Franklin denies ever seeing or receiving the account agreement until after litigation began. It is undisputed that the account agreement did not contain an arbitration provision.
On January 20, 2013, Tamara Franklin (“Tamara”), Franklin’s niece who lives in Atlanta,' came to Mobile to visit Franklin. While at Franklin’s house, Tamara noticed a document that she thought was a bank statement from PNC Bank. Tamara asked Franklin what the document was, and Franklin said it was his “savings account.” It appears that Tamara was concerned that Franklin owed money to PNC Bank. Franklin said he did not owe PNC Bank any money but that Tamara could call his financial advisor, Sonja Moore-Dennis, if she had any concerns. Franklin alleges that Moore-Dennis was a PNC Bank agent or employee at this time; PNC Bank denies that it had ever employed Moore-Dennis.
After investigating the matter, Franklin and Tamara came to the conclusion that Moore-Dennis had been stealing funds *1134 from Franklin’s accounts.[1] Additionally, it appeared to Franklin and Tamara that Moore-Dennis had created an online-banking profile for Franklin but had set up the profile so that account notifications were sent to her e-mail address, Franklin, who is elderly,[2] does not have Internet access or an e-mail address and does not know how to use online banking.
On February 13, 2013, Franklin and Tamara met with Jessica Ellis, a branch manager for PNC Bank, about their concerns. Two days later, at the request of PNC Bank, Franklin and Tamara returned to PNC Bank and met with Ellis and two others, who told them that PNC Bank’s investigation into the matter was ongoing and that Franklin needed to have another person added to his existing accounts. Franklin chose Tamara. Both Franklin and Tamara signed a document entitled “Account Registration and Agreement,” which PNC Bank refers to as a “signature card.” That document provided, in relevant part:
“Account Agreement: By signing this Account Registration and Agreement and/or by using the account, by requesting and/or using and/or later adding any account related services, including but not limited to Debit Card/ATM Card, Overdraft Protection, PNC Bank Online services, I agree to be bound by the terms and conditions of PNC Bank’s Account Agreement for Checking Accounts and Savings Accounts ... as well as any other terms and. conditions that may apply to my PNC Bank account, account features and/or services.”
Shortly thereafter, PNC Bank sought to amend its agreement with Franklin to include a predispute arbitration provision,[3] which reads as follows:
“READ THIS ARBITRATION PROVISION CAREFULLY: IT WILL IMPACT HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED. Under the terms of this Arbitration Provision, and except as set forth below, Claims (as defined below) will be resolved by individual (and not class-wide) binding arbitration in accordance with the terms specified herein, if you or we elect it.”
(Boldface type and capitalization in original.) The arbitration provision also included an opt-out, which had to be exercised “within forty-five (45) days after either (i) the date of the mailing to you of this Arbitration Provision or (ii) the day you open your Account, whichever is later.”
According to Anita Bloss, a PNC Bank loss-prevention manager, PNC Bank sent *1135 Franklin three bank statements in February 2013, which, she said, notified him of the arbitration provision. However, all three of the statements provided by Bloss affirmatively stated that no enclosures were included with the bank statements. Franklin and Tamara denied that they received either the statements or the enclosure.
Franklin sued PNC Bank and Moore-Dennis on November 27, 2013, alleging fraud, suppression, breach of fiduciary duty, and various forms of negligence and wantonness. On January 3, 2014, PNC Bank moved to compel arbitration, which Moore-Dennis joined. In support of its motion to compel, PNC Bank submitted the following: the affidavit of Anita Bloss, the signature card, the PNC Bank welcome letters, the account agreement, the three bank statements that allegedly were sent to Franklin notifying him of the arbitration provision, and the arbitration provision itself that was allegedly forwarded to Franklin. Franklin opposed the motion, attaching affidavits from himself and Tamara stating that they never received the bank statements or the arbitration provision. Franklin also stated that he never agreed to arbitrate and that he did not know of his right to .opt out of arbitration because he never received the arbitration provision.
On March 11, 2014, PNC Bank filed a supplemental brief, accompanied by the affidavit of Alexis Ramsey, an online-bank support manager for PNC Bank. Ramsey stated that PNC Bank had sent e-mails to Tamara in February 2013 saying that Franklin’s bank statements were available for review online. Ramsey also stated that the arbitration provision, along with the statements, had been posted on Franklin’s online-banking profile. Relying on Ramsey’s affidavit, PNC Bank argued that the e-mail and the posting of the arbitration provision on Franklin’s online-banking profile properly notified Tamara of the arbitration provision.
On March 19, 2014, Franklin filed' a supplemental 'brief and supplemental affidavits of Franklin and Tamara. In her affidavit, Tamara admitted that she had made a mistake in her first affidavit by saying that she had signed up to receive electronic notifications. Tamara stated that she did not-sign up or otherwise elect to receive electronic statements. .Instead, Tamara claimed that she only changed the e-mail address-associated.with Franklin’s accounts from an e-mail address that she alleged was Moore-Dennis’s e-mail address to Tamara’s e-mail address..- Tamara also stated that Franklin did not have an e-mail address, did not have Internet access, and did not know how to use an online-banking account. ,
Tamara also stated that after she changed the e-mail .address on Franklin’s account -from Moore-Dennis’s- e-mail address to hers, she was able to view limited information when she logged on to Franklin’s account. Specifically, Tamara claimed that she could not access Franklin’s monthly, bank . statements, Tamara claimed that it was only after numerous telephone calls, personal meetings with PNC Bank personnel, and other correspondence with PNC Bank that she finally gained electronic access to Franklin’s bank statements in September 2013.
On March 20, 2014, PNC Bank filed a supplemental affidavit of Alexis Ramsey. Ramsey stated that, “[i]n 2013, PNC Bank customers, including Mr. Joseph A. Franklin, who were enrolled in online banking for their accounts and requested online account statement access had access to their account statements once they logged on to their account with their user name and password.” (Emphasis added.) Ramsey said that PNC Bank online support *1136 had received no reports in 2013 of any customers who could not access their online statements once they had logged on to their accounts. Ramsey claimed that Tamara had the ability in February 2013 to access Franklin’s online .statements, although her explanation was confusing.[4]
Ramsey’s supplemental affidavit also sought to correct a mistake in her previous affidavit. Ramsey had said in her first affidavit that e-mails were sent to an aol. com e-mail address. After Tamara stated that that was not her e-mail address, Ramsey’s supplemental affidavit said that this was a typographical error in her first affidavit and that the e-mails had been sent to a bellsouth.net e-mail address.
On March 21, 2014, PNC Bank filed a reply brief to Franklin’s opposition, arguing that, if Tamara “logged into those accounts, the Account Statements that notified her of the Arbitration Provision were only a click away.” PNC Bank also argued, based on Ramsey’s supplemental affidavit, that it was “impossible given the technical parameters of [Franklin’s] online account with PNC Bank” that Tamara was unable to access the accounts. That same day, PNC Bank moved to strike Franklin’s and Tamara’s supplemental affidavits. On March 25, 2014, Franklin filed an opposition to PNC Bank’s motion to strike. Franklin also moved to strike Ramsey’s supplemental affidavit.
On April 16, 2014, the trial court held a hearing on the motion to compel arbitration, at which counsel for PNC Bank conceded that PNC Bank had not mailed either the account agreement or the arbitration provision to Franklin. However, PNC Bank argued that if Tamara had logged on to Franklin’s account electronically, “the Arbitration Provision was available ‘only a click away.’ ”
On June 5, 2014, the trial court issued a 17-page order denying the motion to compel arbitration. The trial court held that PNC Bank’s attempt to add the arbitration provision was ineffective for lack of notice. The trial court noted that although Tamara had enrolled in online banking for Franklin’s account, PNC Bank had presented no evidence indicating that either Franklin or Tamara had requested online-account-statement access for Franklin’s account. The court also found that, contrary to PNC Bank’s argument that the arbitration agreement was “only a click away,” Tamara would have had to have gone through five steps to access the insert containing the arbitration provision: (1) log on to Franklin’s account, (2) click on the “Statements” menu, (3) find and click on the “February” menu, (4) click on the “Important Account Information” menu, arid (5) click on the “Insert 1” menu to reach the arbitration-provision insert. Citing four federal cases addressing the issue of electronic notifications of arbitration provisions, the trial court concluded that PNC Bank failed to properly notify Franklin of the arbitration provision. '
*1137 Alternatively, the trial court held that emailing Franklin or allowing Franklin to access the-accounts electronically did not constitute proper notice under the Notices” provision of the account agreement. The trial court reasoned:
“The Notices provision provides that any written notice PNC Bank gives its customers is ‘effective when it is deposited in the United States mail’ and sent to the customer’s last known address which appears on its records. An email or electronic access is not proper notice of the arbitration provision amendment to the 2012 Account Agreement. Sherman Indus. v. Alexander, 980 So.2d 991, 995 (Ala.Civ.App.2007) (revocation of guaranty agreement not effective when agreement provided that the only way to revoke the guaranty was by written notice by certified or registered mail). The applicability of the Notices provision is confirmed by the Right to Opt Out paragraph in the Arbitration Provision which states, in part, that ‘[w]e must receive your telephone call or written notice within forty-five (45) days after either (i) the date of he mailing to you of this Arbitration Provision or (ii) the date you open your Account, whichever is later.’ ”
The trial court concluded its order by denying the parties’ motions to strike. Moore-Dennis filed her notice of appeal on July 10, 2014; PNC Bank filed its notice of appeal on July 16, 2014.

II. Standard of Review

The following standard of review has been applied to this Court’s review of a ruling on a motion to compel arbitration:
“This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. ‘[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.’ Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on application for rehearing).”
Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (emphasis omitted).

III. Discussion

As stated by Moore-Dennis and PNC Bank, the sole issue before the Court is whether the trial court erred in denying the motion to compel arbitration filed by PNC Bank and Moore-Dennis. They argue that PNC Bank notified Franklin of the arbitration provision in such a way that compelling arbitration here is consistent with this Court’s prior decisions and that the cases to the contrary cited by the trial court are distinguishable. Moore-Dennis and PNC Bank also argue that the trial court improperly treated online bank statements differently from paper bank statements and that it subjected the “notice” provision of the account agreement to higher scrutiny than other parts of the account agreement. They further argue that upholding the trial court’s order denying the motion to compel arbitration would “contravene good public policy.” Finally, Moore-Dennis and PNC Bank argue that there is no basis on which to hold that the arbitration provision is unconscionable or *1138 that its retroactive application in this case would be improper.
In response, 'Franklin accuses Moore-Dennis and PNC Bank of improperly changing their arguments throughout the course of the proceedings below and of improperly raising new arguments on appeal. Drawing mostly on the cases cited by the trial court, Franklin also argues that Moore-Dennis and PNC Bank failed to meet their burden of proving the existence of a valid agreement to arbitrate. This argument focuses on cases addressing online banking, a relatively new phenomenon. The issue whether a bank may unilaterally amend an account agreement solely by posting a notice to a customer’s online-banking profile is an issue of first impression for this Court. Franklin next argues that, under the plain language of the account agreement, it was improper to notify him of the arbitration provision by e-mail or other electronic means. Franklin further argues that the cases upon which Moore-Dennis and PNC Bank rely are distinguishable or that they should be overruled. Moreover, Franklin argues that Moore-Dennis and PNC Bank waived their public-policy arguments. Finally, Franklin argues that the trial court’s order is due to be affirmed because, he says, the arbitration provision is unconscionable and would have an improper retroactive application if applied to his claims.
In reply, Moore-Dennis and PNC Bank argue that the account agreement permits PNC Bank to post online notice of the arbitration provision. Moore-Dennis and PNC Bank then argue that they preserved their arguments for appeal and that the precedents they cite should not be overruled. Moore-Dennis and PNC Bank then contest Franklin’s claim that this Court cannot consider their public-policy arguments because they have waived those arguments. Finally, Moore-Dennis and PNC Bank argue that the arbitration provision is not unconscionable and that applying it retroactively would not be improper.
In addressing the parties’ claims, we will first consider Franklin’s claims that Moore-Dennis and PNC Bank'did not preserve certain arguments for appellate review. Second, we will examine our cases and cases from other jurisdictions to determine how those cases apply to the specific issue whether posting notice to a customer’s online-banking profile provides sufficient notice that an account agreement is being amended to add an arbitration provision. Finally, should we hold that PNC Bank provided proper notice of the arbitration provision to Franklin, we will consider whether the trial court’s order is due to be affirmed for other reasons.

A. Preservation

Franklin notes that, in their initial motion to compel arbitration, Moore-Dennis and PNC Bank argued that the arbitration provision was mailed to Franklin using United States mail. However, they later changed their position, conceded that the arbitration provision was not mailed to Franklin, and argued that PNC Bank made Franklin’s statements and the arbitration provision available to him online and that that was sufficient notice. Franklin also notes Moore-Dennis and PNC Bank did.not argue in the trial court the case of American Bankers Insurance Co. of Florida v. Tellis, 192 So.3d 386 (Ala.2015). Citing Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000), and Ex parte Elba General Hospital & Nursing Home, Inc., 828 So.2d 308, 312 (Ala.2001), Franklin argues that we may not reverse the trial court’s order on an argument not raised in the trial court.
Franklin’s argument is flawed in two respects. First, neither Ryals nor Elba *1139 General Hospital stands for the proposition that a party may not change or clarify its position in the trial court before the trial court makes its ruling. See Ryals, 773 So.2d at 1013 (“[T]he trial court cannot be reversed on any ground or argument not presented for or against the motion [for a summary judgment].”); Elba General Hospital, 828 So.2d at 312 (“[T]his Court cannot hold the trial court in error on the basis of arguments made for the first time on appeal.”). Thus, Ryals and Elba General Hospital do not support Franklin’s contention that the trial court’s order cannot be reversed because Moore-Dennis and PNC Bank changed their positions before the trial court issued its order. Second, this Court recently held that, although a party must preserve an issue for appellate review, one is not necessarily prohibited from providing on appeal “additional precise reasons and authorities in support of a theory or position properly raised below.” Ex parte Knox, 201 So.3d 1213, 1217 (Ala.2015). Moore-Dennis and PNC Bank certainly preserved for appellate review the issue whether PNC Bank properly máde the arbitration provisión available to Franklin. Moreover, under Knox, Moore-Dennis and PNC Bank are not prohibited from bringing American Bankers to this Court’s attention, especially because it was decided after the trial court issued its order and because Franklin had the opportunity to address it in his appellate brief.
Moore-Dennis and PNC Banks’ public-policy argument is another matter. Assuming without deciding that it is proper for courts to consider public-policy art guments, Moore-Dennis and PNC Bank did not raise the question of public policy in the trial court. They argue that they have not waived their public-policy -argument because, they say, it is “consistent with [the] arguments made below.” However, we view this as an attempt to “bootstrap” a separate but related issue to an issue that was properly preserved below. Thus, Moore-Dennis and PNC Bank have waived this issue.[5]
- B. Online Banking
The key issue in this case is whether posting notice of the arbitration provision to Franklin’s online-banking profile constituted sufficient notice to render the arbitration provision effective. As noted above, this is an issue of first impression for this Court. In its order denying Moore-Dennis and PNC Bank’s motion to compel arbitration, the trial court found that the Alabama cases on pojnt all required notice before an arbitration provision contained in an amendment could be considered binding. The trial court also considered cases from other jurisdictions that addressed online banking and found that, under those decisions, the notice provided to Franklin was insufficient to bind him to arbitration.
Moore-Dennis and PNC Bank argue that the following cases mandate that the motion to compel arbitration be granted: American Bankers Ins. Co. of Florida v. Tellis, 192 So.3d 386 (Ala.2015); Providian Nat’l Bank v. Screws, 894 So.2d 625 (Ala.2003); UBS PaineWebber, Inc. v. Brown, 880 So.2d 411 (Ala.2003); SouthTrust Bank v. Williams, 775 So.2d 184 (Ala. *1140 2000); Woodmen of the World Life Ins. Soc’y v. Harris, 740 So.2d 862, 368 (Ala.1999); and First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553 (1999). However, in SouthTrust Bank, Woodmen, of the World, UBS PaineWebber, and First Family, the plaintiffs either had received proper notice or failed to dispute that they were not properly notified. SouthTrust Bank, 775 So.2d at 191 n. 8 (noting that the plaintiffs “[did] not contend that SouthTrust failed to send them notice of the proposed amendment to the regulations”); Woodmen of the World, 740 So.2d at 364 (noting that the amendment to fraternal-benefit society’s constitution providing for arbitration was properly adopted “in accordance with the notice and voting requirements of Woodmen’s constitution and bylaws”); UBS PaineWebber, 880 So.2d at 413 (holding that the plaintiff “received the master account agreement and notice of the arbitration clause contained in that document”); and First Family, 736 So.2d at 558-59 (holding that plaintiffs were bound by the' arbitration provision when they signed an agreement containing an arbitration provision, even though they did not read the arbitration provision). In this ease, however, the heart of the matter is whether Franklin received proper notice of the arbitration provision. Moreover, in Providian National, unlike Franklin, the customer was bound by statute to reject the addition of an arbitration provision if he or she did not want it to become effective. 894 So.2d at 627-28 (noting that plaintiffs’ failure to respond to and reject bank’s amendment of credit-card agreements amounted to acquiescence to amendment under § 5-20-5, Ala. Code 1975).
Even in American Bankers, the numbers of the forms representing the standalone arbitration provisions were listed on the declarations page of the policy, which this Court reasoned “indicated that the forms were part of that policy” and imposed a “duty to investigate the contents of those forms because the declarations page indicated that the forms were part of the policy.” American Bankers, 192 So.3d at 390. Thus, this Court reasoned that the policyholders received something indicating that a material part of the agreement was. missing. In this case, Franklin received nothing, either in the account agreement or when he executed the signature card or in the mail that should have notified him that there was a material pait of the account agreement about which he did not know—unless, of course, electronic notifications in Franklin’s online-banking profile constituted sufficient notice.
Although this Court has never considered this question before, Franklin provides this Court with five cases to support his argument that posting the arbitration provision online was not sufficient notice. In Martin v. Wells Fargo Bank, N.A. (No. C 12-06030, Dec. 2, 2013) (N.D.Cal.2013) (not selected for publication in F.Supp.), Madeline Martin opened a checking account with Wells Fargo Bank in 1987. Martin sued Wells Fargo in November 2012, and Wells Fargo moved to compel arbitration. Martin objected, arguing that she never received notice of any arbitration provision. Wells Fargo countered that it had amended the account agreement to include an arbitration provision, which went into effect in February 2012. Wells Fargo argued that the arbitration provision was “published online as a disclosure that Martin would have received upon logging into her account at www. wellsfargo.com anytime between December 1, 2011 and May 31, 2012.” The court noted that ‘Wells Fargo presented] no evidence that Martin did log in to the account during that time frame.”
The Martin court held that Wells Fargo’s attempt to notify Martin was insufficient:
*1141 “As to the online notification, Martin maintains she did not see the notification on her online account, nor does she recall logging in to the online account during the period Wells Fargo asserts the notice was displayed online. Martin Decl. ¶ 5. Wells Fargo has not yet produced evidence to contradict Martin’s position. As to the online notification, the Larsen declaration states only that the disclosure was published online as a message Martin ‘would have received upon logging into her account’ but not that Martin actually did log in and see the disclosure. Larsen Decl. ¶ 7. On the present record at this stage in the proceedings, Wells Fargo has not met its burden to demonstrate Martin received proper notice of the changes to her account agreement.”
(Emphasis added.) Thus, Martin held that the online notice was insufficient because Wells Fargo failed to present evidence indicating that Martin (1) logged on to her account and (2) saw the notice.[6]
The United States Court of Appeals .for the Second Circuit came to a similar conclusion in Schnabel v. Trilegiant Corp., 697 F.3d 110 (2d Cir.2012). In Schnabel, Lucy Schnabel, Edward Schnabel, and Brian Schnabel brought a class action against Trilegiant Corp. The Schnabels were enrolled in an online program offered by Trilegiant called “Great Fun,” which offered discounts on goods and services sold online in exchange for a membership fee. Schnabel, 697 F.3d at 113-14. The Schna-bels sued Trilegiant, and Trilegiant moved to compel arbitration. Trilegiant conceded that the arbitration provision did not appear on the Internet pages the Schnabels would have first encountered when they enrolled in Great Fun. However, Trilegiant argued that “the plaintiffs were put on inquiry notice of the arbitration provision” “through the email sent to each plaintiff after his enrollment.” 697 F.3d at 121. The Second Circuit held that sending an email containing the terms of enrollment, which contained the arbitration provision, after the Schnabels had, enrolled did not constitute sufficient notice. 697 F.3d at 126-28. The court reasoned that a person’s mere receipt of “an email does not without more establish that he or she should know that the terms disclosed in the email relate to a service in which he or she had previously enrolled and that a failure affirmatively to opt out of the service amounts to assent to those terms.” 697 F.3d at 126.
'In contrast with Martin and Schnabel, two federal district courts have granted motions to compel arbitration when notice of the arbitration provision was provided electronically. In Versmesse v. AT & T Mobility, LLC (No. 3:13 CV 171, Mar. 4, 2014) (N.D.Ind.2014) (not selected for publication in F.Supp.), AT & T Mobility, LLC, sent an e-mail to its management-level employees informing them that the company was adopting an arbitration program. The e-mail provided a link to the arbitration agreement itself and told the employees that they could opt out if they did not wish to participate. AT & T Mobility produced expert testimony showing that Norma Jean Versmesse opened the email and clicked on the link that took her to the arbitration agreement. Versmesse eventually sued AT & T Mobility, and AT & T Mobility moved to compel arbitration. The United States District Court for the *1142 Northern District of Indiana granted AT & T Mobility’s motion to compel arbitration, noting that “there is no dispute that the arbitration email was sent to the plaintiffs company email and viewed by someone accessing her account using her user-name and, password.”
Similarly, in Karzon v. AT & T, Inc. (No. 4:13-CV-2002, Jan. 7, 2014) (E.D.Mo.2014) (not selected for publication in F.Supp.), Rami Karzon was employed by Southwestern Bell Telephone Company, a subsidiary of AT & T, Inc. (“AT & T”). In late 2011, AT & T notified its employees by e-mail that it was implementing an arbitration program, “The email included a link to a web page containing the text of the arbitration agreement. Plaintiff received the email on December 1, 2011. AT & T’s records establish that plaintiff accessed the email and associated web page that day.” The arbitration agreement also provided an opt out upon timely notice. Karzon sued AT & T, and AT & T moved to compel arbitration. The United States District Court for the Eastern District of Missouri granted the motion to compel. The court reasoned that e-mail was a valid way of entering into an arbitration agreement. The court also reasoned that Kar-zon “was provided ample notice of his right to opt out.... By failing to opt out, he affirmatively accepted the arbitration agreement.” Thus, the motion to compel arbitration was granted in Karzon because Karzon received the e-mail, saw the arbitration provision, and failed to exercise his right to opt out.
Finally, unlike Versmesse and Karzon but like Martin and Schnabel, there is one more case in which a federal court denied a motion to compel arbitration when notice was provided electronically. In Hudyka v. Sunoco, Inc., 474 F.Supp.2d 712 (E.D.Pa.2007), Daniel Hudyka was an engineer for Sunoco, Inc. During the course of Hudy-ka’s employment, Sunoco adopted an arbitration program and purportedly notified its employees through two e-mails, a booklet, a -posting on the company intranet Web page, and a series of “overview sessions” discussing the program. However, Hudyka alleged that he received none of these notifications, and Sunoco produced no evidence that Hudyka had received any of them. Furthermore, the first e-mail said simply that, it was “From the office of Rolf Naku.” The first e-mail suggested that arbitration was optional, but the second e-mail contained contradictory terms as to whether arbitoation was optional or binding. Sunoco also alleged that the emails contained a link to the intranet Web page containing the arbitration agreement, but Sunoco never produced evidence to support that claim. .
Hudyka eventually sued Sunoco, and Su-noco rhoved to compel arbitration. The United States District Court for the Eastern District of Pennsylvania denied the motion. As to the e-mail notification, the court noted that Sunoco produced no evidence showing that Hudyka opened the email, that he ever received the booklet, or that he ever attended one of the “overview sessions” mentioned in the e-mails. It also noted that the e-mails failed to clearly advise Hudyka that arbitration was binding and not optional. Moreover, the court noted that the e-mail did not provide a link to the company’s intranet Web page where the arbitration provision was posted. Finally, the court noted that the first e-mail simply stated that it was “From the office of Rolf Naku.” The e-mail “did not announce that the message was important and affected employees’ rights. It assumed that employees knew who Rolf Naku was, [but] employees were given no idea why this message among the company-wide email traffic was significant.” Id. *1143 at 716. Thus, the court denied the motion to compel arbitration.[7]
‘ This Court has been presented with five cases ■ dealing with electronic notifications of the adoption of an arbitration provision. In none' of those cases did any court hold that merely sending an e-mail alone or posting a notice on a Web page alone constituted sufficient notice that the recipient of the e-mail or viewer of the Web page was entering into an arbitration agreement. On the contrary, in each of the five cases, the respective courts expressly or impliedly required proof that the recipient (or someone with the recipient’s username and password) accessed the specific e-mail or visited the specific Web page containing the arbitration provision. We believe that this rule is sound.[8]
This rule is to be distinguished from the mailbox rule, which Moore-Dennis and PNC Bank argue should apply to electronic notifications. Moore-Dennis and PNC Bank have provided no authority demonstrating that the mailbox rule has been applied to electronic forms of notification. On the contrary, all the authority, presented to us in this case leads us to the opposite conclusion.
In this case, Franklin did not have an email address, did not have Internet access, and did not know how to use online banking. PNC Bank routinely sent Tamara emails saying that Franklin’s statements were ready for review electronically. However, none of the e-mails in this case contained the text of the arbitration provision itself. On the contrary, like the emails in Hudyka, PNC Bank’s e-mails did not provide any indication that “the message was important and affected [customers’] rights.” Hudyka, 474 F.Supp.2d at 716. Even the e-mails in Versmesse and Karzon told the recipients that the companies had adopted an arbitration provision and provided a link to the provision; the er mails in this case stated merely that Franklin’s statements were ready for review. Thus, because PNC Bank did not prove that Tamara or Franklin accessed an e-mail containing the text of the arbitration provision, the e-mails alone were insufficient to notify Tamara and Franklin of the existence of the arbitration provision.
Moore-Dennis and PNC Bank argue that Tamara was able to log on to Franklin’s online-banking, profile at least after September 2013. Moreover, Ramsey’s supplemental affidavit claimed that Tamara had access to Franklin’s online statements from January 24, 2013, until May 9, 2013, and then again from July 23, 2013, *1144 until January 11, 2014. Unlike the evidence in Versmesse and Karzon, which was crystal clear, proving that someone with the employees’ user names and passwords had accessed the specific Web page containing the arbitration agreements, Ramsey’s explanation of how Tamara had access to Franklin’s statements in this case is not clear at all. Regardless, Ramsey’s supplemental affidavit tends to show only that Tamara could have accessed the online statements, not that she did. Moore-Dennis and PNC Bank have offered no evidence indicating that Tamara or Franklin actually accessed the specific Web page Containing the arbitration provision.[9] Under the rule recognized above, that is what Moore-Dennis and PNC Bank would have been required to prove. Thus, the trial court’s judgment is due to be affirmed because PNC Bank and Moore-Dennis failed to show that Franklin accessed the Web page containing the arbitration provision.
Because we conclude that the trial court’s order is due to be affirmed, we pretermit discussion of whether any of our prior cases need to be overruled and whether the arbitration provision is invalid on the grounds of unconscionability, retro-activity, or any other ground.

IV. Conclusion

Moore-Dennis and PNC Bank failed to prove that Tamara or Franklin accessed either the specific Web page on which the arbitration provision was located or a specific e-mail containing the arbitration provision itself. Thus, Franklin did not receive proper notice of the amendment to the account agreement and is not bound by it. Therefore, the motion to compel arbitration was properly denied, and the order of the trial court is affirmed.
1131142—AFFIRMED.
PARKER, J., concurs.
MURDOCK, J., concurs in part and concurs in the result.
STUART, BOLIN, SHAW, MAIN, WISE, and BRYAN, JJ., concur in the result.
1131176—AFFIRMED.
PARKER, J., concurs.
MURDOCK, J., concurs in part and concurs in the result.
STUART, BOLIN, SHAW, MAIN, WISE, and BRYAN, JJ., concur in the result.

.Although irrelevant for purposes of this appeal, Franklin and Tamara appear to have arrived at this conclusion through conversations with Moore-Dennis, PNC Bank’s customer-service department, and fraud investigators with PNC Bank. Franklin alleges that Moore-Dennis made unauthorized withdrawals from and charges to Franklin’s account and opened PNC Bank credit cards in Franklin’s name, Franklin alleges that Moore-Dennis funded, these expenditures through the improper use of Franklin’s retirement pension, Social Security funds, and IRA, as well as drawing on a reverse mortgage of Franklin’s house and obligating him to multiple lines of credit.

. Franklin's attorneys allege that Franklin is 75 years old. However, that fact does not appear in the record. The only fact in the record indicating Franklin’s ¡age is the trial court's finding that he is "elderly.”

. PNC Bank claims that it amended the account agreement with every account holder to include a predispute arbitration provision. Whether the decision was company-wide is irrelevant to this appeal, but the Court notes that the citation to the record in PNC Bank’s brief does not establish that PNC Bank made a company-wide decision to amend every customer’s account agreement to include a pre-dispute arbitration provision.

. Her explanation was as follows:
“Exhibit 'B' to my previous Affidavit, which is attached hereto as Exhibit ‘A,’ shows that the accounts of Joseph A. Franklin had access to online account statements beginning January 24, 2013, which for that date is indicated by the words 'Feature Chan' under 'Field,' and 'OS’ under 'Current.' These accounts were removed from online statement access on May 9, 2013, which for that date is indicated by the words 'Feature Chan’ under ‘Field’ and 'OS' under ‘Previous.’ These accounts were returned to online statement access on July 23, 2013, which for that date is indicated by the words ‘Feature Chan’ under ‘Field’ and ‘OS’ under ‘Current.’ . The accounts remained with online access for the account statements until January 11, 2014. Any changes in online statement access would have been made at the request of the customer.”

. Additionally, Moore-Dennis and PNC Bank failed to cite any authority in their initial brief supporting their argument. "[I]t is well settled that a failure to comply with the requirements of Rule 28(a)(10)[, Ala. R.App. P.,] requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.” State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005) (citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)).

. Moore-Dennis and PNC Bank argue that Martin is distinguishable because in Martin there was no evidence indicating that Martin ever logged on to her account, whereas evidence that Franklin’s account was accessed electronically exists in this case. However, Moore-Dennis and PNC Bank fail to note that Martin required Wells Fargo to present evidence both that she logged on and that she saw the notice.

. Moore-Dennis and PNC Bank contend that Hudyka is distinguishable, arguing that Pennsylvania law differs from Alabama law in significant ways. However, even assuming Moore-Dennis and PNC Bank’s assessment of the law is accurate, Moore-Dennis and PNC Bank do not explain how these differences affect the analysis. Moore-Dennis and PNC Bank also argue that Hudyka denied the motion to compel arbitration because the language in the notice was not clear enough to tell Hudyka what was expected of him, but Franklin does not dispute that the language in the arbitration provision at issue here was adequate. However, the adequacy of the language in Hudyka was only a secondary holding; the Hudyka court also held that Sunoco did not provide Hudyka proper notice. See Hudyka, 474 F.Supp.2d at 716-19.

. Moore-Dénnis and PNC Bank cite § 7-4-406, Ala.Code 1975, in a footnote in their joint brief, arguing that a bank customer has a duty to read his or her bank statement when it is “sent or made available” to him or her. They argue that the statements were "made available” to Franklin online, at least as of September 2013. However, nothing in § 7-4-406 addresses arbitration provisions; the statute merely precludes a customer from asserting certain claims against the bank, none of which are applicable to this appeal. See § 7-4-406(c)-(d).

. In her first affidavit, Tamara stated that she received Franklin’s statements electronically. However, in her second affidavit, Tamara said that that statement was a mistake and that she did not receive Franklin's statements electronically. She then went on to say that she received e-mails stating that Franklin’s statements were ready for electronic review but that she could not access them. Moore-Dennis and PNC Bank moved to strike this part of Tamara's affidavit, but the trial court denied the motion to strike. The trial court reasoned that Tamara’s second affidavit did not contradict her first one but merely tried to clarify a mistake, just as PNC Bank used subsequent affidavits to correct mistakes it had made in previous affidavits. Moore-Dennis and PNC Bank have not challenged this ruling on appeal, nor do they argue that Tamara's first affidavit is proof that she accessed the specific Web page containing the arbitration provision.